JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SHARON GRISWOLD, MD MPH

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rahul Munshi, Esquire Console Mattiacci Law, LLC
1525 Locust Street, 9th Floor Philadelphia, PA 19102
(215) 545-7676

### DEFENDANTS

DREXEL UNIVERSITY and
DREXEL UNIVERSITY COLLEGE OF MEDICINE

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq.; 43 P.S. §951, et seq.; Phila. Code §9-1101, et seq

Brief description of cause:
Plaintiff brings this action against her former employer for discrimination based on sex.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
02/14/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below; **NOTE: federal question actions take precedence over diversity cases.)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions.</u>

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Fort Washington, PA 19034 _____

Address of Defendant: _____ 3201 Arch Street, Suite 430 Philadelphia, PA 19104 _____

Place of Accident, Incident or Transaction: _____ 3201 Arch Street, Suite 430 Philadelphia, PA 19104 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐ No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐ No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 02/14/2022 _____ _____ 307548

_Attorney-at-Law / Pro Se Plaintiff_ _____ _Attorney I.D. # (if applicable)_

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
   *(Please specify)* _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
   *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Rahul Munshi, Esquire _____, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 02/14/2022 _____ _____ 307548

_Attorney-at-Law / Pro Se Plaintiff_ _____ _Attorney I.D. # (if applicable)_

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| SHARON GRISWOLD, MD MPH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DREXEL UNIVERSITY and | : | NO. |
| DREXEL UNIVERSITY COLLEGE OF MEDICINE | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
     and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
     exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
     commonly referred to as complex and that need special or intense management by
     the court. (See reverse side of this form for a detailed explanation of special
     management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( X )

| | | |
|---|---|---|
| 02/14/2022 | | Plaintiff, Sharon Griswold, MD MPH |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-827-5101 | munshi@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
## Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation"  as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHARON GRISWOLD, MD MPH** : | |
| **Fort Washington, PA 19034** : | |
| : | |
| **Plaintiff,** : | |
| : | **CIVIL ACTION NO.** |
| **v.** : | |
| : | |
| **DREXEL UNIVERSITY** : | **JURY TRIAL DEMANDED** |
| **3201 Arch Street, Suite 430** : | |
| **Philadelphia, PA 19104** : | |
| : | |
| **and** : | |
| : | |
| **DREXEL UNIVERSITY COLLEGE** : | |
| **OF MEDICINE** : | |
| **3201 Arch Street, Suite 430** : | |
| **Philadelphia, PA 19104** : | |
| : | |
| **Defendants.** : | |
| : | |

## COMPLAINT

### I. INTRODUCTION

Plaintiff, Sharon Griswold, MD MPH, brings this employment discrimination, retaliation, and hostile work environment action against her former employers, Drexel University and Drexel University College of Medicine (collectively, "Drexel" or "Defendants"). Dr. Griswold is a highly regarded, internationally recognized educator and award-winning female Emergency Medicine ("EM") physician. Plaintiff became Drexel's first female full professor in the Department of Emergency Medicine since the legacy of the department began in 1971. After Dr. Griswold raised numerous complaints that female employees of Drexel, including herself, were being treated disparately because of their sex, Defendants continued to discriminate and retaliate against Dr. Griswold, culminating in the retaliatory non-renewal and termination of her

1

employment in January 2020.

Plaintiff was discriminated against because of her sex, subjected to a hostile work environment, and retaliated against for complaining about the same in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code §9-1101, *et seq.* ("PFPO"). Plaintiff seeks all damages, including economic loss, compensatory, and punitive damages, and all other relief under applicable federal and state law as this Court deems appropriate.

## II.   **PARTIES**

1.      Plaintiff, Sharon Griswold, MD MPH, is a female individual and citizen of the Commonwealth of Pennsylvania.

2.      Drexel is a private research university based in Philadelphia, Pennsylvania.

3.      Drexel is engaged in an industry affecting interstate commerce and regularly does business in Pennsylvania.

4.      At all times material hereto, Drexel employed more than fifteen (15) individuals.

5.      At all times material hereto, Defendants have had integrated operations, have had shared ownership, have had common management, and have had centralized control over their employment matters.

6.      At all times material hereto, Defendants have acted as a single employer, joint employers, and/or alter egos.  The operations of Defendants are substantively consolidated.

7.      At all times material hereto, Drexel has acted as an "employer" within the meaning of the statutes which form the basis of this matter.

8.      At all times material hereto, Plaintiff was an "employee" of Drexel within the

meaning of the statutes which form the basis of this matter.

9.      At all times material hereto, Drexel acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Drexel and in furtherance of Drexel's businesses.

**III.     JURISDICTION AND VENUE**

10.     The causes of action which form the basis of this matter arise under Title VII, the PHRA, and the PFPO.

11.     The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

12.     The District Court has supplemental jurisdiction over Count II (PHRA) pursuant to 28 U.S.C. §1367.

13.     The District Court has supplemental jurisdiction over Count III (PFPO) pursuant to 28 U.S.C. §1367.

14.     Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

15.     On or about November 8, 2019, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), and dual-filed with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination and retaliation alleged herein.  Attached hereto, incorporated herein and marked as Exhibit 1 is a true and correct copy of the PHRC/EEOC Complaint.

16.     On or about January 17, 2020, Plaintiff filed a Second Complaint with the PHRC, and dual-filed with the EEOC, complaining of additional acts of discrimination and retaliation alleged herein.  Attached hereto, incorporated herein and marked as Exhibit 2 is a true and

correct copy of the Second PHRC/EEOC Complaint.

17.     On or about November 19, 2021, the EEOC issued to Plaintiff a Notice of Right to Sue.  Attached hereto, incorporated herein and marked as Exhibit 3 is a true and correct copy of that notice.

18.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.     **FACTUAL ALLEGATIONS**

19.     Plaintiff received her Bachelor of Science in Biology from the University of Delaware in 1989 and her Doctor of Medicine degree from Jefferson Medical College in 1993.

20.     She completed her residency in Emergency Medicine at Thomas Jefferson University Hospital in 1996.

21.     Plaintiff received a Master of Public Health degree and Graduate Certificate in Health Management and Finance from the Johns Hopkins Bloomberg School of Public Health in 2010.

22.     Plaintiff is also an alumna of the *Hedwig van Ameringen* Executive Leadership in Academic Medicine ("ELAM") program.  ELAM is a core program of the Institute for Women's Health and Leadership at Drexel University College of Medicine.

23.     Prior to joining Drexel, Plaintiff was employed by Thomas Jefferson University Hospital, where she served as the Emergency Medicine Student Clerkship Director from 1997 to 2000 and Emergency Medicine Program Director from 2000 to 2006.

24.     Plaintiff joined Drexel in 2007 and cared for patients at Hahnemann University Hospital.

25.     Plaintiff last held the positions of Professor of Emergency Medicine and Anesthesia and Perioperative Care, Director of the Simulation Division of the Department of Emergency Medicine, and Founder and Director of the Master of Science in Medical and Healthcare Simulation.

26.     In her role as Founder and Director of the Master of Science in Medical and Healthcare Simulation, Plaintiff reported to Elisabeth Van Bockstaele, PhD (female), Dean of the Graduate School of Biomedical Sciences and Professional Studies.

27.     Van Bockstaele reported to John Fry (male), President of Drexel.

28.     In her roles as Professor of Emergency Medicine and Anesthesia and Perioperative Care and Director of the Simulation Division of the Department of Emergency Medicine, Plaintiff reported to Richard Hamilton, MD (male), Professor and Chair of the Emergency Department.

29.     Hamilton reported to Daniel Schidlow, MD (male) until 2019, and then Charles Cairns, MD (male), in their roles as Dean of Drexel University College of Medicine.

30.     Schidlow and Cairns reported to Fry.

31.     Plaintiff was the first – and upon information and belief, until the termination of her employment in January 2020, the only – female full Professor in the Department of Emergency Medicine.

32.     Upon information and belief, at the time of Plaintiff's termination of employment in January 2020, only seven (7) out of the twenty-five (25) faculty member employees in the Department of Emergency Medicine were female.

33.     Drexel had an underrepresentation of female employees, particularly female employees in higher-ranking positions.

34.     Drexel treated Plaintiff worse, and in a more hostile and dismissive manner, than they treated male and/or non-complaining employees.

35.     By way of example, Plaintiff had been ignored and excluded from communications related to her expertise, job duties and responsibilities.

36.     Certain of Plaintiff's authority, job duties, responsibilities, and resources were taken away from her and assigned to less-qualified male employees.

37.     Female employees complained to Plaintiff of sex discrimination, including that they and other female employees were treated worse than male employees.

38.     One female employee of Drexel told Plaintiff that she started working from home, instead of coming to the office, because of how she was treated by Jamie Teufel (male), paramedic, and Keith Kalbach (male), Administrator, Department of Emergency Medicine.

39.     In or around early 2017, a female employee resigned from Drexel.  This female employee told Plaintiff and Hamilton that she believed Drexel was a male-dominated "boys' club," and that female employees were treated worse because of their sex.

40.     Her job duties and responsibilities were assigned to Teufel.

41.     Plaintiff also repeatedly complained of sex discrimination.

42.     Drexel, however, repeatedly failed to take any remedial or preventative action following her or other women's sex discrimination complaints.

43.     Drexel further repeatedly failed to investigate Plaintiff's sex discrimination complaints.

44.     On multiple occasions, Hamilton instructed Plaintiff not to contact Human Resources ("HR").

6

45.     In or around November 2017, in a meeting with Hamilton, Plaintiff complained that there was a "boys' club" at Drexel.

46.     Plaintiff stated that she had talked with several female employees who complained of sex discriminatory bias at Drexel.

47.     Hamilton then informed Plaintiff that he had rescinded his offer to make her Academic Vice Chair, an offer that he initially made in or around 2016, before he learned of her sex discrimination complaints.

48.     Hamilton stated to Plaintiff that he withdrew the offer because he was angry with her after a male employee told him that Plaintiff complained of sex discrimination and that she filed claims against male Chairs.

49.     Plaintiff was qualified for the position of Academic Vice Chair and had been performing the job duties and responsibilities associated with that position.

50.     Drexel failed to promote Plaintiff to Academic Vice Chair because of her sex and/or her complaints of sex discrimination.

51.     Plaintiff continued, as she had been, doing the job duties and responsibilities associated with the Academic Vice Chair position without having the title.

52.     Plaintiff further continued to have authority taken from her in retaliation for her complaints and advocacy for gender equity within the department.

53.     In or around October 2018, in meetings with Katie Shannon (female), HR Business Partner, and Lindsay O'Brien (female), Equal Opportunity and Title IX Investigator, Plaintiff complained of sex discrimination.

54.     Plaintiff complained that male employees were treated more favorably than female employees and assisted with their careers more than female employees.

55.    Drexel was dismissive of Plaintiff's complaints and failed to protect her from retaliation.

56.    To the best of Plaintiff's knowledge, Drexel took no action in response to Plaintiff's complaints of sex discrimination.

57.    In or around October 2018, after a female Emergency Department Nurse interviewed for a Research Nurse position in the Emergency Medicine Department, Plaintiff heard that Teufel blocked her from being selected for the position because she had previously complained of sex discrimination against Teufel.

58.    In or around November 2018, in a meeting with Shannon and Hamilton, Plaintiff again complained of sex discrimination.

59.    Plaintiff complained that Hamilton continued to listen to the "boys' club" of Teufel and Kalbach, and that he did not address Plaintiff's prior complaints.

60.    Plaintiff again asked for Hamilton to promote her to the Academic Vice Chair position.

61.    Hamilton again refused to promote Plaintiff.

62.    Plaintiff further complained that she was not promoted because in the Academic Vice Chair position one of her direct reports would have been Teufel – and Teufel would not have wanted to report to her because she is a female.

63.    Hamilton instructed Plaintiff not to go back to HR, and that he would handle everything going forward.

64.    Hamilton instructed Plaintiff to ask her colleagues how she should change *her* behavior to have a better relationship with Teufel and Kalbach.

65.    After Plaintiff spoke with her colleagues, she reported her colleagues' responses to Hamilton.

66.    Plaintiff relayed that one peer physician told Plaintiff that she should be a man – because, if Plaintiff were a man, she would not have these problems at Drexel.

67.    Plaintiff further relayed that another peer physician reported that Kalbach and Teufel were the ones that needed to change.

68.    Following her complaints, Plaintiff was treated worse, and in a more hostile and dismissive manner, than she had been treated before she complained of sex discrimination.

69.    Drexel removed certain authority, job duties, and responsibilities from Plaintiff and assigned them to male and/or non-complaining employees.

70.    In or around September 2019, in a meeting with Shannon, Plaintiff complained of sex discrimination again.

71.    Plaintiff against informed Shannon that she was retaliated against, treated worse, and treated in a more hostile and dismissive manner, than she had been treated before she complained of sex discrimination.

72.    During this conversation, Plaintiff requested that Drexel conduct a formal investigation into her sex discrimination complaints.

73.    Shannon stated that Plaintiff should contact the Office of Equality and Diversity.

74.    In or around September 2019, in a phone call with Jenna Perez (female), Assistant Director, Workplace Accommodation and Assistive Technology, Disability Resources, Plaintiff complained of sex discrimination.

75.    Plaintiff again requested that Drexel conduct an investigation into her sex discrimination complaints.

76.     Drexel failed to take any remedial or preventative action following her complaints of sex discrimination and retaliation.

77.     Drexel failed to investigate her complaints of sex discrimination and retaliation.

78.     On or around October 6, 2019, Plaintiff followed up with Perez, via email, as she had not received any response to her request for an investigation into her sex discrimination complaints.

79.     Plaintiff had a follow up conversation with Perez on or around October 10, 2019, to reiterate her concerns and fear of retaliation, and she restated her request for an investigation into her sex discrimination complaints.

80.     On October 16, 2019, in a conversation with Melissa Richman (female), Director of Administrative Services, Graduate School of Biomedical Sciences and Professional Studies, Plaintiff again complained of sex discrimination.

81.     Plaintiff told Richman that she had complained of sex discrimination several times already.

82.     Richman told Plaintiff to "get over it."

83.     On or around October 17, 2019, Plaintiff followed up with Perez, as she had not received any response, requesting an update on her sex discrimination complaints.

84.     Plaintiff complained of ongoing evidence of and fear of retaliation, stating that more job duties and responsibilities were being taken away from her and Teufel was benefitting.

85.     On October 29, 2019, in a meeting with Shannon, Van Bockstaele, Richman, Charles Lashley (male), Department of Public Safety, and an armed police officer, Plaintiff was notified that Drexel was placing her on an administrative leave, effective immediately.

86.     Plaintiff was informed that Drexel was conducting an internal investigation regarding possible University policy violations by Plaintiff.

87.     Plaintiff was escorted out of the building and told that she should not report to the campus during the investigation or have any contact with staff, program faculty, or students during her administrative leave.

88.     Plaintiff was also told that she was being relieved of all administrative duties, that her access to the University network was disabled, and that her building access had been suspended.

89.     Plaintiff asserted that she was being retaliated against for complaining of sex discrimination and that Defendants "should be ashamed of themselves."

90.     Drexel placed Plaintiff on an administrative leave because of her sex and/or her complaints of sex discrimination.

91.     Drexel did not allow Plaintiff an opportunity to provide any explanation before placing her on an administrative leave.

92.     Drexel announced that Plaintiff was on leave for the remainder of the semester, which ended on or around December 13, 2019.

93.     Plaintiff had no disciplinary of performance issues throughout her employment with Drexel.

94.     Plaintiff was the only employee placed on administrative leave on October 29, 2019.

95.     On November 8, 2019, Plaintiff filed her First Complaint with the PHRC, and dual-filed with the EEOC, against Drexel.  See Exhibit 1.

96.     On November 10, 2019, Plaintiff informed Hamilton, Cairns, Van Bockstaele, Fry, and Shannon by e-mail that she had filed a complaint of discrimination and retaliation with the PHRC, and Plaintiff attached the filing to the e-mail.

97.     Plaintiff did not receive a response to her e-mail.

98.     On December 9, 2019, Plaintiff was asked by Lashley to meet with him for an interview in connection with Drexel's investigation.

99.     On December 17, 2019, Plaintiff met with Lashley and handed him a copy of the First Complaint that she had filed with the PHRC.

100.    Plaintiff answered questions in connection with Drexel's investigation and stated that she wanted to return to work.

101.    Lashley told Plaintiff that he was upset that Drexel had involved Public Safety in this matter and that he did not consider Plaintiff to be a threat.

102.    On December 18, 2019, Plaintiff sent an e-mail to Lashley, Van Bockstaele, Fry, and Shannon, complaining of discrimination and retaliation.  Plaintiff stated: "I have indeed been distraught as I believe this whole process has been orchestrated gender-based discrimination and retaliation for making my gender discrimination complaints."   Plaintiff further stated: "I have been cut off from my professional identity, email, and my students for seven weeks," and that "I am looking forward to returning."

103.    Drexel did not respond to Plaintiff's e-mail.

104.    Plaintiff's employment contract with Drexel expired on January 14, 2020.

105.    On January 14, 2020, Plaintiff sent an e-mail to Shannon, asking for an update regarding the status of her employment, including whether she remained on administrative leave.

106.    On January 16, 2020, Shannon e-mailed Plaintiff attaching a letter stating that Drexel terminated Plaintiff's employment, effective January 14, 2020.

107.    The letter from Shannon stated: "Public Safety has concluded their investigation and has determined that there were no findings.  Therefore, your administrative leave has ended effective January 14, 2020."

108.    The letter further stated that Plaintiff's faculty position in the department of Emergency Medicine terminated on January 14, 2020.

109.    Although Drexel had notified Plaintiff and her colleagues in July 2019 that their employment would be terminated in January 2020 due to Hahnemann University Hospital's closure, Plaintiff's male and non-complaining colleagues with significant non-patient care responsibilities were offered positions by Drexel to remain employed.

110.    Plaintiff was reassured on multiple occasions prior to the filing of her First Complaint that she and other colleagues with significant non-patient care responsibilities would retain their roles.

111.    Drexel did not offer Plaintiff the opportunity to continue to lead the Master of Science in Medical and Healthcare Simulation which she created.

112.    Drexel's stated reason for terminating Plaintiff's employment is a pretext for sex discrimination and/or retaliation.

113.    Drexel failed to provide Plaintiff with an explanation, including the criteria, as to why Drexel failed to renew her employment contract or failed to offer her a position after the closure of Hahnemann University Hospital.

114.    Drexel failed to communicate with Plaintiff regarding her employment status because of her sex and/or her complaints of sex discrimination and retaliation.

115.    Drexel failed to return Plaintiff to work after placing her on an administrative leave because of her sex and/or her complaints of sex discrimination and retaliation.

116.    Drexel failed to take any remedial or preventative action following Plaintiff's complaints of sex discrimination and retaliation.

117.    Before complaining of sex discrimination and retaliation, Plaintiff had no disciplinary or performance issues throughout her employment with Drexel.

118.    Drexel's comments and conduct evidence a bias against female employees and employees who engage in protected activity.

119.    Plaintiff's sex was a motivating and/or determinative factor in Drexel's discriminatory treatment of Plaintiff, in the creation of the hostile work environment to which Plaintiff was subjected, and in the termination of Plaintiff's employment.

120.    Plaintiff's complaining of discrimination and a hostile work environment was a motivating and/or determinative factor in Drexel's discriminatory and retaliatory treatment of Plaintiff, in the creation of the hostile work environment to which Plaintiff was subjected, and in the termination of Plaintiff's employment.

121.    Drexel failed to prevent or address the harassing, discriminatory, and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of harassing, discriminatory, and retaliatory conduct.

122.    The retaliation against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

123.    The conduct of Drexel, as set forth above, was severe or pervasive enough to make a reasonable person believe that the conditions of employment are altered and the working environment is hostile or abusive.

124.     As a direct and proximate result of the conduct of Drexel, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, loss of her academic status and faculty appointment, loss of the education program that she dedicated nearly a decade of her career to build, pain and suffering, embarrassment, humiliation, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

125.     The conduct of Drexel, as set forth above, was outrageous under the circumstances, was done by and with the knowledge of upper management and warrants the imposition of punitive damages against Defendants.

## COUNT I (TITLE VII)

126.     Plaintiff incorporates herein by reference paragraphs 1 through 125 above, as if set forth herein in their entirety.

127.     By committing the foregoing acts of retaliation and discrimination against Plaintiff on the basis of Plaintiff's sex, Defendants have violated Title VII.

128.     Said violations were willful and intentional and warrant the imposition of punitive damages.

129.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein.

130.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

131.     No previous application has been made for the relief requested herein.

## COUNT II (PHRA)

132.     Plaintiff incorporates herein by reference paragraphs 1 through 131 above, as if set forth herein in their entirety.

133.     Defendants, by committing the foregoing acts of discrimination and retaliation, have violated the PHRA.

134.     As a direct and proximate result of Defendants' violations of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein.

135.     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

136.     No previous application has been made for the relief requested herein.

## COUNT III (PFPO)

137.     Plaintiff incorporates herein by reference paragraphs 1 through 136 above, as if set forth herein in their entirety.

138.     Defendants, by committing the foregoing acts of discrimination and retaliation, have violated the PFPO.

139.     As a direct and proximate result of Defendants' violations of the PFPO, Plaintiff has sustained the injuries, damages and losses set forth herein.

140.     Plaintiff is now suffering and will continue to suffer irreparable injuries and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until the Court grants the relief requested herein.

141.     No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff, Sharon Griswold, MD MPH, and against Defendants. Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

(a)     declaring the acts and practices complained of herein to be in violation of Title VII;

(b)     declaring the acts and practices complained of herein to be in violation of the PHRA;

(d)     declaring the acts and practices complained of herein to be in violation of the PFPO;

(e)     enjoining and permanently restraining the violations alleged herein;

(f)     entering judgment against Defendants in favor of Plaintiff in an amount to be determined;

(g)     awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits and earnings capacity which Plaintiff has suffered and will continue to suffer as a result of Defendants' discriminatory and retaliatory misconduct;

(h)     awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures and pain and suffering, which Plaintiff has suffered or may suffer as a result of Defendants' improper conduct;

(j)     awarding punitive damages to Plaintiff under Title VII and the PFPO;

(m)     awarding Plaintiff such other damages as are appropriate under Title VII, the PHRA, and the PFPO;

(n)      awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

(o)      granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

CONSOLE MATTIACCI LAW, LLC

Dated: February 14, 2022          By:  _____
Rahul Munshi
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
munshi@consolelaw.com
215-545-7676
Attorneys for Plaintiff,
Sharon Griswold, MD MPH

# EXHIBIT 1

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

| | |
|---|---|
| COMPLAINANT: | : |
| | : |
| **SHARON GRISWOLD** | : Docket No. |
| | : |
| v. | : |
| | : |
| RESPONDENTS: | : |
| | : |
| **DREXEL UNIVERSITY** | : |
| | : |
| and | : |
| | : |
| **DREXEL UNIVERSITY** | : |
| **COLLEGE OF MEDICINE** | : |

1.  The Complainant herein is:

    Name:      Sharon Griswold

    Address    **REDACTED**

2.  The Respondents herein are:

    Names:    Drexel University; Drexel University College of Medicine

    Address:   3201 Arch Street, Suite 430
               Philadelphia, PA 19104

3.  I, Sharon Griswold, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female) and retaliation because of my complaints of sex

discrimination, as set forth below.

**Discrimination and Retaliation**

A.   I specifically allege:

[1]      I began working at Respondents in or about 2007.

[2]      I consistently perform my job duties in a highly competent manner.

[3]      I hold the position of Professor of Emergency Medicine and Anesthesia and Perioperative Care, Director of the Simulation Division of the Department of Emergency Medicine, and Founder and Director of the Master of Science in Medical and Healthcare Simulation.

[4]      In my roles as a Professor of Emergency Medicine and Anesthesia and Perioperative Care and Director of the Simulation Division of the Department of Emergency Medicine, I report to Richard Hamilton (male), Professor and Chair of Emergency Department. Hamilton reports to Charles Cairns (male), Dean, Drexel University College of Medicine.  Cairns reports to John Fry (male), President.

[5]      In my role as Founder and Director of the Master of Science in Medical and Healthcare Simulation, I report to Elisabeth Van Bockstaele (female), Dean, Graduate School of Biomedical Sciences and Professional Studies.  Van Bockstaele reports to John Fry (male), President.

[6]      I am the first and only female full Professor in the Department of Emergency Medicine.

[7]      Only seven (7) out of the twenty-five (25) faculty member employees in the Department of Emergency Medicine are female.

[8]      Respondents have an underrepresentation of female employees, particularly female employees in higher-ranking positions.

[9]      Respondents treat me differently and worse, and in a more hostile and dismissive manner, than they treat male and/or noncomplaining employees.

[10]      I have been ignored and excluded from communicates related to my job duties and responsibilities.

[11]      Certain of my job duties, responsibilities, and resources have been taken away and assigned to less qualified male employees.

[12]      Female employees, including Varsha Goswami (female), Emergency Medicine Physician, Jessica Parsons (female), Emergency Medicine Associate Professor, and Srikala Ponnuru (female), Emergency Medicine Associate Professor, complained to me of sex discrimination, including that they and other female employees were treated worse than male employees.

[13]      I repeatedly complained of sex discrimination.

[14]      Respondents repeatedly failed to take any remedial or preventative action following my sex discrimination complaints.

[15]      Respondents repeatedly failed to investigate my sex discrimination complaints.

[16]      On multiple occasions, Hamilton instructed me not to contact Human Resources.

[17]      Michele Spotts (female), Medical and Healthcare Simulation Instructional Designer, told me that she started working from home, instead of coming into the office, because of how she was treated by Jamie Teufel (male), Program Director, and Keith Kalbach (male), Administrator, Department of Emergency Medicine.

[18]     In or about early 2017, Sierra Williams (female), Simulation Specialist and EMS Instructor, resigned from Respondents.  Williams told me that she believed Respondents were male-dominated, a "boys' club," and that female employees were treated worse because of their sex.  Williams reported Hamilton.  Williams' job duties and responsibilities were assigned to Teufel.

[19]     In or about November 2017, in a meeting with Hamilton, I complained that there was a "boys' club" at Respondents.  I stated that I had talked with three (3) female employees who complained of sex discriminatory bias at Respondents.  Hamilton told me that he would no longer offer to make me Academic Vice Chair, an offer that he initially told me about in or about 2016, before I complained of sex discrimination.  I was qualified for the position.  Hamilton told me that he withdrew the offer because he was angry with me after a male employee told him that I complained of sex discrimination and that I file claims against male Chairs.

[20]     Respondents failed to promote me to Academic Vice Chair because of my sex and/or my complaints of sex discrimination.

[21]     I continued, as I had been, doing the job duties and responsibilities associated with the Academic Vice Chair position without having the title.

[22]     In or about June 2018, in meetings with Katie Shannon (female), Human Resources Business Partner, and Lindsey _____, Equal Opportunity and Title IX Investigator, I complained of sex discrimination.  I complained that male employees were treated more favorably than female employees and assisted with their careers more than female employees.  Respondents were dismissive of my complaints.

[23]       In or about October 2018, after Colleen Costello (female), Emergency Department Nurse, interviewed for a Research Nurse position in the Emergency Medicine Department, I heard that Teufel blocked her from being selected for the position because she had previously complained of sex discrimination in connection with Teufel.

[24]       In or about November 2018, in a meeting with Shannon and Hamilton, I complained of sex discrimination.  I complained that Hamilton continued to listen to the boys' club of Teufel and Kalbach, and did not acknowledge my prior complaints.  I again asked that Hamilton promote me to the Academic Vice Chair position.  I was again not promoted.  If I were promoted to Academic Vice Chair, Teufel would have reported to me.  I complained that Teufel would not have wanted to report to me because I am female.  Hamilton instructed me not to go back to Human Resources, and that he would handle everything going forward.  Hamilton instructed me to ask my colleagues how I should change my behavior to have a better relationship with Kalbach and Teufel.

[25]       Respondents failed to promote me to Academic Vice Chair because of my sex and/or my complaints of sex discrimination.

[26]       I continued, as I had been, doing the job duties and responsibilities associated with the Academic Vice Chair position without having the title.

[27]       After I spoke with my colleagues, I reported my colleagues' responses to Hamilton.  I complained that Patricia Baccash (female), Emergency Medicine Physician, told me that I should be a man—because, if I were, I would not have these problems.  I stated that Rita McKeever (female), Emergency Medicine Physician reported that Kalbach and Teufel were the ones that needed to change.

[28]      Following my complaints, I was treated worse, and in a more hostile and dismissive manner, than I was treated before I had complained of sex discrimination.

[29]      Respondents removed from me certain job duties and responsibilities from me and assigned them to male and/or noncomplaining employees.

[30]      In or about July 2019, in a meeting with Shannon, I complained of sex discrimination.  I requested that Respondents conduct an investigation into my sex discrimination complaints.  Shannon stated that I should contact the Office of Equality and Diversity.

[31]      In or about September 2019, in a phone call with Jenna Perez (female), Assistant Director, Workplace Accommodation and Assistive Technology, Disability Resources, I complained of sex discrimination.  I requested that Respondents conduct an investigation into my sex discrimination complaints.  Perez stated that I "should hear something."

[32]      Respondents failed to take any remedial or preventative action following my complaints of sex discrimination and retaliation.

[33]      Respondents failed to investigate my complaints of sex discrimination and retaliation.

[34]      On October 10, 2019, I followed up with Perez, as I had not received any response to my request for an investigation into my sex discrimination complaints.  Perez responded that I should receive an update by October 28, 2019.

[35]      On October 16, 2019, in a conversation with Melissa Richman (female), Director of Administrative Services, Graduate School of Biomedical Sciences and Professional Studies, I complained of sex discrimination.  I complained that my "conflict," as she had termed it, with Teufel was sex discrimination, of which I had complained of multiple times.  She stated

that my "conflict" and my complaints of sex discrimination were two different issues. I stated that they were one in the same.

[36]   On October 28, 2019, I followed up with Perez, as I had not received any response, requesting an update on my sex discrimination complaints and Respondents' investigation. I stated that I was concerned that more job duties and responsibilities were being taken away from me and Teufel was benefitting.

[37]   I received no response from Perez.

[38]   On October 29, 2019, in a meeting with Shannon, Van Bockstaele, and Richman, I was notified that Respondents were placing me on an administrative leave, effective immediately. I was handed a letter, dated October 29, 2019, and signed by Shannon. The letter stated that "an internal investigation is being conducted in reference to a complaint filed against [me] with the Drexel University Public Safety and the Department of Human Resources regarding a possible University policy violation," and that, "[e]ffective immediately [I was] being placed on administrative leave with pay, pending the outcome of the investigation, and [I] should not report to the campus during this time," or "have any contact with staff, program faculty or students during [my] administrative leave." The letter stated that I was "being relieved of all administrative duties and [my] access to the University network has been disabled and building access has been suspended." I complained that I was being retaliated against for complaining of sex discrimination.

[39]   Respondents place me on an administrative leave because of my sex and/or my complaints of sex discrimination.

[40]   Respondents failed to take any remedial or preventative action following my complaints of sex discrimination.

[41]     Respondents did not provide me with an opportunity to provide any explanation before placing me on an administrative leave.

[42]     Respondents announced that I was on leave for the remainder of the semester, which ends on December 13, 2019.

[43]     I had no disciplinary or performance issues throughout my employment with Respondents.

[44]     I was the only employee placed on an administrative leave on October 29, 2019.

[45]     I remain on an administrative leave.

[46]     Before complaining of sex discrimination, I had no indication that my job was in jeopardy.

[47]     Respondents' comments and conduct evidence a bias against female employees and employees who engage in protected activity.

[48]     Respondents' sex discriminatory and retaliatory conduct toward me has caused me emotional distress.

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female) and retaliated against because of my complaints of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, et seq. ("PFPO").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

**X**        **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):   (a); (d)**

_____        Section 5.1 Subsection(s) _____

_____        Section 5.2 Subsection(s) _____

_____        Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.        Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

**X**        **This charge will be referred to the EEOC for the purpose of dual filing.**

6.        The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## **VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

Nov 8, 2019
_____
(Date Signed)

(Signature)   Sharon Griswold

REDACTED

# EXHIBIT 2

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## SECOND COMPLAINT

|  |  |  |
|---|---|---|
| COMPLAINANT: | : | |
| **SHARON GRISWOLD** | : | Docket No. |
| v. | : | |
| RESPONDENTS: | : | |
| **DREXEL UNIVERSITY** | : | |
| and | : | |
| **DREXEL UNIVERSITY COLLEGE OF MEDICINE** | : | |

1.  The Complainant herein is:

    Name:     Sharon Griswold

    Address:  **REDACTED**

2.  The Respondents herein are:

    Names:    Drexel University; Drexel University College of Medicine

    Address:  3201 Arch Street, Suite 430
              Philadelphia, PA 19104

3.  I, Sharon Griswold, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female) and retaliation because of my complaints of sex

discrimination and retaliation, as set forth below.

**Discrimination and Retaliation**

    **A.  I specifically allege:**

       [1]        On November 8, 2019 I filed my first Complaint with the PHRC against Respondents.

       [2]        On November 10, 2019, in an email to Respondents and their employees, including Richard Hamilton (male), Professor and Chair of Emergency Department, Charles Cairns (male), Dean, Drexel University College of Medicine, Elisabeth Van Bockstaele (female), Dean, Graduate School of Biomedical Sciences and Professional Studies, John Fry (male), President, and Katie Shannon (female), Human Resources Business Partner, I stated the following: "As a courtesy, I want to inform you that I have filed a Complaint of discrimination and retaliation with the Pennsylvania Human Relations Commission, a copy of which is attached.  Thank you."

       [3]        I received no response to my email.

       [4]        On December 9, 2019, in a phone call with Charles Lashley (male), Detective, I was asked to meet with him for an interview in connection with Respondent's investigation.

       [5]        On December 17, 2019, in a meeting with Lashley, I handed him a copy of my first PHRC Complaint and complained of sex discrimination and retaliation.  I answered questions in connection with Respondents' investigation, and stated that I wanted to return to work.  Lashley told me that Respondents had instructed him to hold off on interviewing me after Respondents knew that I filed a PHRC Complaint, but that he did not want to write the same in his report.  Lashley told me that he was upset that Respondent had involved Public Safety in this matter, and did not see me as a threat to Respondents' personnel or property on October 29,

2019, when Respondents' placed me on administrative leave, and did not see me as a threat now. He stated that he hoped he would be able to call me that night to inform me that Public Safety would no longer be involved in this investigation.

[6]     I did not receive any communication from Respondents following my interview with Lashley.

[7]     On December 18, 2019, in an email to Lashley, Van Bockstaele, Fry, and Shannon, I complained of sex discrimination and retaliation. I complained: "I have indeed been distraught as I believe that this whole process has been orchestrated gender-based discrimination and retaliation for making my gender discrimination complaints." I stated that I hoped Lashley would contact me before December 20, 2019, when Respondents closed for the holiday. I stated that "I have been cut off from my professional identity, email, and my students for seven weeks," and that "I am looking forward to returning."

[8]     I received no response to my email.

[9]     My employment contact with Respondents expired on January 14, 2020.

[10]    On January 14, 2020, in an email to Shannon, I asked for an update regarding the status of my employment, including whether I remained on administrative leave.

[11]    On January 16, 2020, in an email from Shannon, attaching a letter signed by Shannon, Respondents terminated my employment, effective January 14, 2020. The letter stated the following: "Public Safety has concluded their investigation and has determined that there were no findings. Therefore, your administrative leaves has ended effective January 14, 2020." The letter stated that my "full-time faculty position in the department of Emergency Medicine is terminated on January 14, 2019."

[12]    Respondents terminated my employment because of my sex and/or my complaints of sex discrimination and retaliation.

[13]    Respondents failed to renew my employment contract.

[14]    Respondents failed to provide me with any explanation, including the criteria, as to why Respondents failed to renew my employment contract.

[15]    Respondents failed to renew my contract because of my sex and/or my complaints of sex discrimination and retaliation.

[16]    Respondents failed to communicate with me regarding my employment status after placing me on leave administrative effective October 29, 2019.

[17]    Respondents failed to communicate with me regarding my employment status because of my sex and/or my complaints of sex discrimination and retaliation.

[18]    Respondents failed to return me to work after placing me on an administrative leave effective October 29, 2019.

[19]    Respondents failed to return me to work after placing me on an administrative leave because of my sex and/or my complaints of sex discrimination and retaliation.

[20]    Respondents failed to take any remedial or preventative action following my complaints of sex discrimination and retaliation.

[21]    Before complaining of sex discrimination and retaliation, I had no disciplinary or performance issues throughout my employment with Respondents.

[22]    Respondents' comments and conduct evidence a bias against female employees and employees who engage in protected activity.

[23]     Respondents' sex discriminatory and retaliatory conduct toward me has caused me emotional distress.

**B.**  Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female) and retaliated against because of my complaints of sex discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, et seq. ("PFPO").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

   __X__     **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):** __(a); (d)__

   ____     Section 5.1 Subsection(s) _____

   ____     Section 5.2 Subsection(s) _____

   ____     Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.     Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

   __X__     **This charge will be referred to the EEOC for the purpose of dual filing.**

6.     The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

1/16/2020

(Date Signed)          (Signature)          Sharon Griswold

REDACTED

# EXHIBIT 3

EEOC Form 161-B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  **Sharon Griswold**

**REDACTED**

From:  **Philadelphia District Office**
**801 Market Street**
**Suite 1000**
**Philadelphia, PA 19107**

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 17F-2020-60955 | Damon A. Johnson, State, Local & Tribal Program Manager | (267) 589-9722 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

*Jamie R. Williamson,*
**Jamie R. Williamson,**
**District Director**

November 19, 2021
*(Date Issued)*

cc:    **For Respondent:**
**BoJohn Gyllenhammer, Esq.**
**Deputy General Counsel & Chief**
**Drexel University Office of th**
**Philadelphia, PA 19102**

**For Charging Party:**
**Rahul Munshi**
**Console Mattiacci Law**
munshi@consolelaw.com

Enclosure with EEOC
Form 161-B (11/2020)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope and record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***