**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHARON GRISWOLD, MD MPH,** | : | |
| *Plaintiff*, | : | |
| | : | **CIVIL ACTION NO. 2:22-cv-00568** |
| **v.** | : | |
| | : | |
| **DREXEL UNIVERSITY, *et al.*,** | : | **JURY TRIAL REQUESTED** |
| *Defendants*. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
DREXEL UNIVERSITY AND DREXEL UNIVERSITY COLLEGE,
OF MEDICINE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF PERTINENT FACTS ........................................................... 2

III.    PROCEDURAL BACKGROUND...................................................................... 2

IV.     LEGAL STANDARD........................................................................................ 3

V.      ARGUMENT .................................................................................................... 4

        A.      Griswold Cannot Prove Her Discriminatory Termination Claims ......................... 4

                i.      Griswold Cannot Prove She Was Terminated Under Circumstances Giving Rise to An Inference of Discrimination. ....................................................... 6

                        a.      No Causal Connection Exists Between Griswold's Sex and Her Discharge ...................................................................................... 7

                        b.      Griswold is Not Similarly Situated in All Material Respects to Her Alleged Comparators ....................................................................... 9

                ii.     Hamilton and Griswold Did Not Share the Same Supervisor and Received the Same Treatment. ................................................................................ 11

                iii.    Griswold and Corbin Were Not Similarly Situated. ................................. 11

                iv.     Griswold and Pasirstein Were Not Similarly Situated............................. 12

        B.      Griswold Cannot Prove Retaliatory Discharge.................................................... 14

                i.      Griswold's Termination Cannot Form Part of Her Hostile Work Environment Claim................................................................................. 16

VI.     CONCLUSION.................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrose v. Twp. of Robinson*,
  303 F.3d 488 (3d Cir.2002)................................................................13

*Anderson v. Boeing Co.*,
  No. 15-3073, 2016 WL 9446648 (E.D. Pa. Aug. 30, 2016) ................15

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)................3, 4

*Anderson v. Wachovia Mortg. Corp.*,
  621 F.3d 261 (3d Cir.2010)................................................................6

*Andreoli v. Gates*,
  482 F.3d 641 (3d Cir.2007)................................................................13

*Betts v. New Castle Youth Development Center*,
  621 F.3d 249 (3d Cir. 2010)................................................................3

*Carvalho-Grevious v. Del. State Univ.*,
  851 F.3d 249 (3d Cir. 2017)................................................12, 13, 14

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)...................3

*Childs-Pierce v. Utility Workers Union of Am.*,
  383 F. Supp. 2d 60 (D.D.C. 2005)................................................15

*Daniels v. Sch. Dist. of Phila.*,
  776 F.3d 181 (3d Cir. 2015)................................................13, 14

*Fuentes v. Perskie*,
  32 F.3d 759 (3d Cir. 1994)................................................6, 8

*Jones v. Sch. Dist. of Philadelphia*,
  198 F.3d 403 (3d Cir. 1999)................................................5, 7

*Kunin v. Sears Roebuck & Co.*,
  175 F.3d 289 (3d Cir. 1999)................................................15

*Marra v. Phila. Hous. Auth.*,
  497 F.3d 286 (3d Cir. 2007)................................................14

*Matczak v. Frankford Candy and Chocolate Co.*,
  136 F.3d 933 (3d Cir.1997).................................................................6

*Miller v. International Telephone and Telegraph Corp.*,
  755 F.2d 20 (2d Cir.1985), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88
  L.Ed.2d 122 (1985) ........................................................................5

*Monaco v. Am. Gen. Assur. Co.*,
  359 F.3d 296 (3d Cir. 2004)...........................................................10

*Moore v. City of Phila.*,
  461 F.3d 331 (3d Cir. 2006).......................................................12, 13

*Nat'l R.R. Pass. Corp. v. Morgan*,
  536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)...................15

*Norman v. Kmart Corp.*,
  485 F. App'x 591 (3d. Cir. 2012) .....................................................8

*O'Connor v. City of Newark*,
  440 F.3d 125 (3d Cir. 2006)...........................................................15

*Patterson v. Avery Dennison Corp.*,
  281 F.3d 676 (7th Cir. 2002) ...........................................................9

*Peake v. Pennsylvania State Police*,
  644 F. App'x 148 (3d Cir. 2016) ....................................................10

*Scott v. Harris*,
  550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)..................3

*Simpson v. Kay Jewelers*,
  142 F.3d 639 (3d Cir. 1998).........................................................8, 9

*Staub v. Proctor Hosp.*,
  562 U.S. 411, 131 S. Ct. 1186, 179 L.Ed.2d 144 (2011).....................7

*Tasco v. Electrical Workers IBEW, Local 98*,
  No. 11-1393, 2013 BL 420581 (E.D. Pa. Feb. 8, 2013) .....................5

*Varallo v. Elkins Park Hosp.*,
  63 Fed. Appx. 601 (3d Cir. 2003) .....................................................5

*Weir v. Univ. of Pittsburgh*,
  No. 22-3392, 2023 WL 3773645 (3d Cir. June 2, 2023)......................9

*West v. Phila. Elec. Co.*,
  45 F.3d 744 (3d Cir. 1995)............................................................15

*Whitmore v. Nat'l R.R. Passenger Corp.*,
    510 F. Supp. 3d 295 (E.D. Pa. 2020) ...................................................................5

*Willis*, 808 F.3d 638, 644 (3d Cir. 2015) .........................................................................6

*Young v. Martin*,
    801 F.3d 172 (3d Cir. 2015).......................................................................................4

**Statutes**

Philadelphia Fair Practices Ordinance, Phila Code §9-1101 *et seq*..................................2

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................3

## I.     INTRODUCTION

As widely known throughout the Philadelphia community, in July of 2019, Defendants Drexel University (the "University") and Drexel University College of Medicine ("DUCOM") (collectively referred to herein as "Defendants") learned that the owner of their teaching hospital, Hahnemann University Hospital ("HUH"), had filed for bankruptcy and planned to shutter HUH within weeks.  To preserve the future of its medical college, Defendants made the difficult decision to lay off hundreds of faculty physicians and clinical staff that worked at HUH.  Plaintiff Doctor Sharon Griswold ("Griswold") is one of approximately 270 faculty physicians and staff members who were notified on or about July 18, 2019, that their employment would be terminated effective January 14, 2020, as a result of HUH's closure. Griswold, like almost all of her colleagues, was terminated as a result of this reduction in force ("RIF").

More than two years later, Griswold filed this lawsuit in which she alleged, *inter alia*, that the termination of her employment was discriminatory and/or retaliatory.  However, the record shows that Defendants terminated Griswold's employment on January 14, 2020, because of HUH's closure.  This decision had nothing to do with Griswold's sex or any protected activity that she engaged in either before or after July 18, 2019.  Because the undisputed facts demonstrate that Griswold was terminated for reasons entirely divorced from both her sex and protected activity, Defendants move for partial summary judgment on all of the claims alleged in Griswold's complaint for the reasons set forth herein.

## II.    STATEMENT OF PERTINENT FACTS[1]

Defendants incorporate the accompanying Statement of Undisputed Material Facts ("SUMF") (and all exhibits thereto) as if set forth in full herein and will address additional facts to the extent they provide necessary context and/or support to Defendants' Argument.

## III.    PROCEDURAL BACKGROUND

On or around November 8, 2019, Griswold filed a complaint against Drexel University College of Medicine ("DUCOM") with the Pennsylvania Human Relations Commission ("PHRC") alleging gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq*., the Pennsylvania Human Relations Act (the "PHRA"), 43 PS. § 951 *et seq.*, and the Philadelphia Fair Practices Ordinance (the "PFPO"), Phila Code §9-1101 *et seq. See* Plaintiff's Complaint ("Compl."), [ECF No. 1], ¶ 15. On or about January 16, 2020, Griswold filed an amended complaint with the PHRC that included the same allegations. *Id.* ¶ 16.

On February 14, 2022, Griswold filed this action against Drexel University ("Drexel") and DUCOM (collectively, "Defendants"). The three-count complaint (the "Complaint") alleges that Drexel and DUCOM subjected Griswold to gender-based discrimination, retaliation, and a hostile work environment in violation of Title VII, the PHRA, and the PFPO. *See* Compl. at Introduction. The crux of the Complaint is that Defendants terminated Griswold because of her sex and retaliated against her by firing her after she engaged in the protected activity of complaining about alleged discriminatory treatment she was subjected to on account of her gender. *See id.*

Defendants filed an answer to the Complaint on April 18, 2022, which was later amended on May 17, 2022. *See generally* Defendants Answer, [ECF No. 5], and Amended Answer to the

---

[1]    Defendants include only those facts that are pertinent to the adjudication of the instant motion.

Complaint, [ECF No. 13].  Discovery closed on March 29, 2023.  *See* the Revised Scheduling Order entered on February 23, 2023, [ECF No. 23].  Defendants now move for the entry of summary judgment on Counts I, II, and III of Griswold's complaint to the extent they are predicated on her termination.

## IV.   LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.

In deciding a motion for summary judgment, a court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion."  *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).  "[A] district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255.

The movant bears the initial burden of showing the absence of a genuine issue of material fact.  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted). If the moving party meets this burden with "a properly supported motion for summary judgment . . . the adverse party must set forth specific facts showing that there is a genuine issue for trial."

*Anderson*, 477 U.S. at 250.  "Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment."  *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 252 (3d Cir. 2010).

If "reasonable minds could differ . . . [then] an issue of material fact remains . . . for the trier of fact."  *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015).  However, "[i]f the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50.

## V.    ARGUMENT

Defendants move for judgment in their favor on each of Griswold's claims to the extent they are predicated on the adverse action of termination.  Defendants are entitled to judgment on Griswold's disparate treatment claims raised under Title VII, the PHRA, and the PFPO because Griswold cannot establish a prima facie disparate treatment case.  In the alternative, Defendants are entitled to judgment on these claims because Griswold has not, and cannot, demonstrate that the proffered reason for her termination was pretext for sex discrimination.  Defendants are also entitled to judgment in their favor on Griswold's retaliation claims because Griswold cannot establish a causal link between her protected activity and her termination.  Finally, Defendants are entitled to judgment in their favor on Griswold's hostile work environment claim to the extent it is predicated on her termination because it is not a discriminatory act.

### A.  Griswold Cannot Prove Her Discriminatory Termination Claims

Griswold contends that Defendants discriminated against her by treating her less favorably than male faculty members.  Although the Complaint does not specify which adverse employment actions form the basis of Griswold's disparate treatment claims, she appears to identify at least two actions that she deems discriminatory:  (1) her termination, *see* Compl. at ¶¶ 112, 119; and (2) Defendants' decision not to rehire her or otherwise retain her as the director of their master's

4

program in Medical and Healthcare Simulation, *see id.* ¶ 113.  Defendants move for summary judgment to the extent that Griswold's claims are founded on the termination itself; Defendants' alleged failure to rehire and/or retain Griswold is a separate and distinct adverse action that must be analyzed separately.[2]  *See, e.g., Varallo v. Elkins Park Hosp.*, 63 Fed. Appx. 601, 602 (3d Cir. 2003) (recognizing distinct failure-to-hire and wrongful termination claims where plaintiff's position was eliminated and the defendant-employer failed to rehire her into another position); *Tasco v. Electrical Workers IBEW, Local 98*, No. 11-1393, 2013 BL 420581, at *4 (E.D. Pa. Feb. 8, 2013) (recognizing a failure-to-rehire claim as "separate and distinct" from plaintiff's retaliatory discharge claim); *see also Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 25-26 (2d Cir.1985), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985) (claim of failure to re-hire is sufficiently distinct from claim in the EEOC charge alleging discriminatory discharge).

Defendants are entitled to summary judgment on Griswold's discriminatory termination claims because Griswold cannot establish a prima facie disparate treatment case.  Even if she could establish a prima facie disparate treatment case, Defendants are entitled to judgment on these claims because Griswold has not, and cannot, rebut evidence that there was a legitimate, non-discriminatory reason to terminate her employment on July 18, 2019, due to Hahnemann University Hospital's closure.

---

[2]     Although it is not the subject of the instant motion, Defendants note that Griswold's contention that Defendants failed to retain her on account of her sex is based on speculation that she would have been offered a position to stay on as the director of the MSMS program and related certificate program had she not been placed on administrative leave on October 29, 2019. *See* SUMF ¶¶ 84-87 and record evidence cited therein. The record does not support Griswold's speculation; at most, it establishes that Richman and Van Bockstaele were preparing to engage in negotiations with Griswold to retain her as the director of the MSMS program on a part-time or volunteer basis in the days preceding her suspension. *Id.* Defendants contend that Griswold's uncorroborated speculation cannot, on its fact, prove pretext. *See* Footnote 3 *infra* and authority cited therein.

**i.  Griswold Cannot Prove She Was Terminated Under Circumstances Giving Rise to An Inference of Discrimination.**

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff alleging sex discrimination must first establish a prima facie case.  In order to establish a prima facie case of disparate treatment, Griswold must show: (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she suffered a materially adverse employment action; and (4) the circumstances of the adverse employment action support an inference of discrimination. *Whitmore v. Nat'l R.R. Passenger Corp.*, 510 F. Supp. 3d 295, 304 (E.D. Pa. 2020) (citing *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410-11 (3d Cir. 1999)).  As an alternative to the fourth prong, a plaintiff may show "that similarly situated individuals outside the plaintiff's class were treated more favorably [than he]." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 273–74 (3d Cir.2010) (citing *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 939–40 (3d Cir.1997)) (citation omitted).  Once a plaintiff has established a prima facie case, the employer must come forward with a legitimate, non-discriminatory reason for its adverse employment action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).  If the employer does so, then "the burden shifts back to the plaintiff once more to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual." *Willis*, 808 F.3d 638, 644 (3d Cir. 2015).

Defendants do not dispute, for the purposes of this motion, that Griswold was a member of a protected class (female), that she was qualified for her position, and that her employment was terminated.  However, Griswold cannot, and has not, proved that she was terminated under circumstances that support an inference of discrimination because (1) no causal connection exists between Griswold's sex and her discharge, and (2) Griswold has not, and cannot, show that Defendants treated similarly situated male physicians more favorably.

### a.  No Causal Connection Exists Between Griswold's Sex and Her Discharge

Defendants have offered detailed uncontested evidence that Schidlow, Tillman, and Esposito made the decision to terminate Griswold's employment, along with that of 270 other faculty physicians and staff, on July 18, 2019.  *See* SUMF ¶¶ 57-59 and the record evidence cited therein.  Griswold has not offered proof that any of these decisionmakers harbored animus toward women; in fact, by Griswold's own admission, Schidlow had previously recommended Griswold for the Executive Leadership in Academic Medicine program ("ELAM"), a prodigious academic leadership program.  *See* Griswold Dep., Ex. 1, at 53:22-54:4.

Griswold labors under the misconception that Shannon, Richman, and/or Hamilton had the opportunity to somehow influence the administrator's decision to select Griswold for discharge. But she has not produced any evidence that suggests that Shannon, Richman, or Hamilton played a role in deciding which 270 faculty physicians (and staff) would receive termination letters in July of 2019.   To establish a causal relationship between the actions of these three non-decisionmakers and an adverse decision by an unbiased decisionmaker, Griswold must show "'some direct relationship between the injury asserted and the injurious conduct alleged,'" which goes beyond "links that are 'remote, purely contingent, or indirect.'" *Jones*, 796 F.3d at 330 (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 419, 131 S. Ct. 1186, 179 L.Ed.2d 144 (2011)). The record testimony makes in this case strongly suggests that neither Shannon nor Richman nor Hamilton were in any position to dictate who would be terminated on July 18, 2019, *see* Hamilton Dep., Ex. 13, at 171:23-173:15, and, in fact, Griswold, like many faculty physicians, were selected for termination because HUH's closure and subsequent elimination of all of their clinical duties no longer supported their full-time employment.  *Id.*; *see also* SUMF ¶¶ 52-62 and the record evidence cited therein.  In fact, Hamilton received his own termination letter on July 18, 2019, the same day as Griswold, Hamilton Dep., Ex. 13, at 173:6-9, and was only able to retain his position

7

as chair of the emergency medicine department on a part-time basis after engaging in negotiations with Defendants in the fall of 2019.  *See* SUMF ¶¶ 81-84 and the record evidence cited therein.

Griswold has offered no evidence that Shannon, Richman, or Hamilton communicated with Schidlow, Tillman, or Esposito before issuing the July 18, 2019, termination letters, or that the decisionmakers sought recommendations from Hamilton, Richman, or Shannon when deciding which faculty members to terminate upon news of HUH's impending closure.  In fact, the undisputed evidence in the record is that some two-hundred and fifty DUCOM physicians received the same termination letter on July 18, 2019—regardless of specialty, sex, or any other protected characteristic.  SUMF ¶ 59 and the record evidence cited therein; *see also* Hamilton Dep., Ex. 13, at 173:6-9 ("Q.[:] Did you play any role in the decision to terminate Dr. Griswold's employment? A.[:] Did I play any role?  No, I got the same letter.  We all got the same sad letter."); Pltf. Dep., Ex. 1, at 19:3-14 ("What I can say is that I know the Drexel employed physicians who had primary clinical responsibilities, making taking care of patients at Hahnemann when Hahnemann close, we all got the letter . . .").  There's simply no evidence in the record that the decisionmakers relied on a biased report from Hamilton, Richman or Shannon when terminating Griswold's employment. *See* Hamilton Dep., Ex. 13, at 173:6-9; Shannon Dep., Ex. 18, at 193:1-194:5 ("Q. Did everyone in emergency medicine receive this letter? A. I don't know if everyone did. I didn't do these, so I didn't – wasn't involved in this."), 193:2-194:12 (explaining that everyone who received the termination letter Griswold received on July 18, 2019, was let go, irrespective of position or sex); Richman Dep., Ex. 9, at 33:22-34:3 ("Q. Did you opinion that it was difficult to work with Dr. Griswold play any role in the decision to not retain Dr. Griswold as the program director of MSMS? A. Absolutely not, as I don't make those decisions.").  For these reasons, Griswold cannot establish that there was a causal connection between her sex and her discharge, and she cannot rely

on the purported biases of non-decisionmakers to establish the fourth prong of a prima facie case of discriminatory termination.

**b. Griswold is Not Similarly Situated in All Material Respects to Her Alleged Comparators**

Even if Griswold could establish a prima facie case of discriminatory termination, Defendants are still entitled to summary judgment in their favor on Griswold's claims because she cannot establish that the legitimate, non-discriminatory reason proffered for her discharge—the closure of HUH and elimination of her position—was pretext for sex discrimination.  To defeat summary judgment, Griswold can demonstrate pretext by pointing to evidence from which a jury could reasonably "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Norman v. Kmart Corp.*, 485 F. App'x 591, 593 (3d. Cir. 2012) (*quoting Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).  The Third Circuit provided further explanation of this third prong in *Simpson*:  "[t]he plaintiff may show that the employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998).

Griswold's claim of pretext is based largely on her contention that Defendants terminated her faculty appointment on January 14, 2020, while three other male physicians—namely, Hamilton, Dr. Ted Corbin ("Corbin"), and Dr. Michael J. Pasirstein ("Dr. Pasirstein")—retained faculty positions within the Department of Emergency Medicine.  But this pretext theory does not save her discriminatory termination claim because it challenges only Defendants' decision not to retain her as the director of the MSMS program.  Griswold has put forth no evidence upon which

a factfinder could either disbelieve the defendants' articulated reasons for her termination as a professor of Emergency Medicine—a separate and distinct appointment—or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of this decision.  By Griswold's own admission, hundreds of doctors who worked for DUCOM and carried clinical responsibilities at HUH received the same termination letter that she did on July 18, 2019.  *See* Pltf. Dep., Ex. 1, at 19:3-14 ("What I can say is that I know the Drexel employed physicians who had primary clinical responsibilities, making taking care of patients at Hahnemann when Hahnemann close, we all got the letter . . .").

Even if Griswold could rely on comparator evidence to challenge Defendants' decision to terminate her faculty appointment, the evidence in the record establishes that Griswold was not similarly situated to any of these doctors, and, therefore, Defendants are still entitled to summary judgment on Griswold's discriminatory termination claim.  To be similarly situated, the named comparators must be "directly comparable to [Griswold] in *all material respects*."  *Weir v. Univ. of Pittsburgh*, No. 22-3392, 2023 WL 3773645, at *3 (3d Cir. June 2, 2023) (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)) (emphasis added).  Relevant factors used to assess whether a comparator is similarly situated includes the job function, level of supervisory responsibility and salary, whether the two employees had the same supervisor, and were subject to the same standards, and engaged in similar conduct "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Peake v. Pennsylvania State Police*, 644 F. App'x 148, 151 (3d Cir. 2016) (quoting *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 305 (3d Cir. 2004)).  An examination of the record evidence compels but one conclusion—Griswold was not similarly situated to her alleged comparators in all material respects.

10

**ii.  Hamilton and Griswold Did Not Share the Same Supervisor and Received the Same Treatment.**

Hamilton is not an appropriate comparator because he and Griswold held different positions and reported to different supervisors.  SUMF ¶ 9; Hamilton Dep., Ex. 13, at 91:1-92:5. Moreover, the record is clear that Hamilton received a termination letter on July 18, 2019, that was nearly identical to Griswold's, and was only rehired in a part time capacity as chair after engaging in negotiations with Defendants in late 2019.  SUMF ¶¶ 81-84 and the record evidence cited therein.  While Defendants' decision to retain Hamilton as chair of the emergency medicine department may support Griswold's contention that Defendants' decision not to retain or rehire her was pretextual, it does nothing to undermine the legitimate, non-discriminatory reasons supporting the discharge decision.  For these reasons, Hamilton is not a relevant comparator, and may not be used to support her claim of pretext.

**iii.  Griswold and Corbin Were Not Similarly Situated.**

Griswold contends that the fact that Corbin, a male physician, retained his employment in January 2020 is proof that Defendants' proffered reasons for her termination are pretext for sex discrimination.  But Corbin and Griswold are not similarly situated in "all material respects." While Corbin and Griswold shared the same supervisor ("Hamilton") and were both physicians employed within the emergency medicine department, the similarities end there.  Corbin was offered an associate dean position within the College of Public Health, while Griswold's master's program was absorbed by a graduate college.  *See* Defendants' Response to Plaintiff's Interrogatory No. 14, attached hereto as Exhibit 7; *see also* Hamilton Dep., Ex. 13, 203:3-204:15. At the time that the termination letters were issued, Dr. Corbin headed the Healing Hurt People program, a hospital- and community-based violence intervention program that provided services to victims of violence.  *Id.*  The program was well funded by grants and was able to sustain itself

in its move to the School of Public Health. *Id.* Griswold was not affiliated with this program, nor did her simulation program have the outside grant support necessary to sustain her full-time employment. *Id.* Griswold was placed on administrative leave in October of 2019 following reports Defendants received regarding Griswold's behavior in the New College Building, while Corbin was not. *See* SUMF ¶¶ 68-77 and the record evidence cited therein. For these reasons, Corbin is not a relevant comparator, and may not be used to support her claim of pretext.

### iv. Griswold and Pasirstein Were Not Similarly Situated.

Likewise, Griswold and Pasirstein were not similarly situated in all relevant respects. Again, while Corbin and Griswold shared the same supervisor ("Hamilton") and were both physicians employed within the emergency medicine department, the similarities end there. Pasirstein worked at Mercy Philadelphia as a clerkship director and his salary was supported through a contract with Mercy Philadelphia. *See* Defendants' Response to Plaintiff's Interrogatory No. 14, attached hereto as Exhibit 7. Drexel had contractual obligations to Mercy vis-à-vis Dr. Pasirstein's work, and continued Dr. Pasirstein's academic appointments to honor its commitment to that contract. *See id.*; *see* also Pasirstein's Appointment Letter dated December 19, 2019, attached hereto as Exhibit 33 at p. 1 (noting that Pasirstein will continue "serving as Clerkship Director for the Emergency Medicine clerkship"). Defendants were not contractually obligated to continue Griswold's employment, and, for this reason alone, Pasirstein is not a relevant comparator and cannot be used to support Griswold's claim of pretext. Further, it bears noting that Griswold was placed on administrative leave in October of 2019 following reports Defendants received regarding Griswold's behavior in the New College Building, while Pasirstein was not. *See* SUMF ¶¶ 68-77 and the record evidence cited therein.

The record here is clear that 'Griswold's employment was terminated as part of a reduction of DUCOM's workforce prompted HUH's closure and that Griswold's supervisor, whom she

12

alleges created a hostile work environment for women, played no part in Defendants' decision to terminate her employment.  In fact, Hamilton received notice on July 18, 2019, that his own employment would be terminated on the same day as Griswold.  Although Griswold questions the prudence and fairness of Defendants' decision to terminate her, this court cannot second-guess this decision absent proof that Defendants made the decision with a discriminatory motive.  *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 527 (3d Cir. 1992) ("[A] plaintiff has the burden of casting doubt on an employer's articulated reasons for an employment decision. Without some evidence to cast this doubt, this Court will not interfere in an otherwise valid management decision.").

Griswold's pretext theory attempts to poke holes only in the articulated reasons supporting Defendants' decision *not to retain her in any capacity* after July 18, 2019.  She has not offered any evidence that her membership in a protected class motivated Defendants' *original decision* to include her in the RIF in July of 2019.  Griswold complains that her "male and non-complaining colleagues with significant non-patient care responsibilities were offered positions by Drexel to remain employed" as evidence of pretext.  Even if the record *did* support this allegation (it does not), this evidence would only provide support for Griswold's allegation that her sex motivated Defendants' decision not to rehire her, not their termination decision.[3]

---

[3]       Although Griswold's failure-to-retain claim is not the subject of the instant motion, it is worth noting that the record evidence unequivocally establishes that Defendants never offered Griswold a full- or part-time position after she received the termination letter dated July 18, 2019, and, at most, were preparing to engage in negotiations with Griswold in the weeks preceding the incident that lead to her administrative leave. *See* Van Bockstaele Dep., Ex. 12, at 87:3-20 (testifying that she never offered Griswold the option to stay on as director of the MSMS program and related certificate program at a reduced salary and that she believed Griswold wasn't interested in that option); Richman Dep., Ex. 9, at 43:24-16 (testifying that she had no conversations with Griswold after October 25, 2019, about staying on as the program director of the MSMS program and related certificate program); 46:6-48:14 (testifying that she intended to speak with Griswold about staying on in a part-time capacity as director of the MSMS programs, but that it was mostly "ideation" as of October 24, 2019). Griswold's contention that Defendants could have offered her a full-time, or even part-time position, at the same salary that she was earning before January 14, 2020, is entirely speculative, and cannot support a disparate treatment claim. *See Ekhato v. Rite Aid Corp.*, 529 Fed. Appx. 152, 156 (3d Cir. 2013) (plaintiff's "subjective belief that the decision to terminate her employment was discriminatory" could not prove pretext); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 414 (3d Cir. 1999) (finding that beliefs without factual

13

## B.  Griswold Cannot Prove Retaliatory Discharge

Defendants are also entitled to summary judgment on Counts I, II and III to the extent that they allege that Griswold was the victim of retaliatory discharge. To establish a *prima facie* case of retaliation, Griswold must tender evidence showing that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action."  *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006)).  For the purposes of this motion, Defendants do not dispute that: (1) Griswold engaged in protected activity when she raised concerns to Shannon in September of 2018 about communication issues within the emergency medicine department and her perceived inequitable application of rules to men and women within the department, the only protected activity that preceded Griswold's termination; and (2) that her termination constitutes an adverse action.  But Griswold has failed to establish the requisite causal link between her 2018 complaint and Defendants' decision to terminate her employment in July of 2019.

As the Third Circuit explained in *Carvalho-Grevious*:

> [A] plaintiff may rely on 'a broad array of evidence' to demonstrate the causal link between [the] protected activity and the adverse [employment] action taken. . . . She can meet this burden by proffering evidence of an employer's inconsistent explanation for taking an adverse employment action, . . . or temporal proximity "unusually suggestive of retaliatory motive," . . . These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference.

---

support are insufficient to show pretext for discrimination); *see also Arnold v. AutoZone, Inc.*, No. 13-1329, 2016 WL 807805, at *10 (E.D. Pa. Mar. 2, 2016) (granting defendant's motion for summary judgment because plaintiff's contention that he was overlooked for a store manager because of his age was speculative and not supported by record evidence).

*Id.* at 260.  However, a plaintiff cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action know of the plaintiff's protected conduct at the time they acted.  *See Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir.2007); *Moore*, 461 F.3d at 351; *cf. Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir.2002) ("It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct.").  A plaintiff cannot rely on mere speculation that an adverse actor or actors learned of her protected activity from other employees to establish a causal link.  *See Daniels*, 776 F.3d at 197 (rejecting plaintiff's speculation that an adverse actor learned of plaintiff's race through the office "grapevine," where their offices were located miles apart).

Griswold cannot prove a causal link between the 2018 concerns that she raised with Shannon and her termination.  As an initial matter, the time period between her protected activity in 2018 and her receipt of her termination notice is more than ten months, a time period that is not "unusually suggestive of retaliatory motive."  *See Carvalho-Grevious,* 851 F.3d at 260; *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 198 (3d Cir. 2015) (concluding that plaintiff had failed to show "unusually suggestive" temporal proximity as "ten months passed between [her protected activity] and [the complained-of adverse employment action]") (internal quotations and citations omitted); *Marra v. Phila. Hous. Auth*., 497 F.3d 286, 302 (3d Cir. 2007) (same).  Moreover, Griswold has offered no evidence that Hamilton or Shannon were involved in or otherwise made decisionmakers aware of Griswold's 2018 complaint at the time that they were identifying over 270 faculty and staff members for termination, or that their alleged animus somehow influenced Defendant's decision to separate Griswold in connection with the July 2019 RIF.  The uncontroverted evidence in the record is that Schidlow, Tillman, and Esposito, made the decision to separate hundreds of

Defendants' employees, including Griswold, in early July 2019 after HUH's owner, American Academic Health System ("AAHS"), filed for bankruptcy protection on or about July 1, 2019, and announced HUH's closure.   Other than the fact that her termination occurred sometime after protected activity, Griswold has pointed to no evidence that suggests retaliatory animus.   Without a showing of a causal connection between her protected activities and her termination, Plaintiff's retaliation claims cannot, and should not, withstand summary judgment.

### i.   Griswold's Termination Cannot Form Part of Her Hostile Work Environment Claim.

The Court cannot, and should not, allow Griswold to offer proof of her termination as evidence that her workplace was hostile to women because the record unequivocally shows that her termination is *not a discriminatory act.*   Griswold's complaint makes it clear that she intends to rely on the continuing violation doctrine to sweep in all of the allegedly discriminatory acts that she suffered over her twelve-year tenure with Defendants to prove her hostile work environment claims.   Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make up a hostile work environment claim; such acts "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period."   *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (citing *Nat'l R.R. Pass. Corp. v. Morgan*, 536 U.S. 101, 105, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)) (explaining courts may consider the "entire scope of a hostile work environment claim . . . so long as any act contributing to that hostile environment takes place within the statutory time period").   Accordingly, to allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the *same unlawful employment practice* and that at least one act falls within the applicable limitations period.   *See Morgan*, 536 U.S. at 122 (emphasis added); *see also West v. Phila. Elec. Co.*, 45 F.3d 744, 754–55 (3d Cir. 1995) (explaining plaintiff must show that at least

16

one act occurred within the filing period and that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination").

However, it is axiomatic that a legitimate, non-discriminatory business decision does not, as a matter of law, provide evidence of a hostile work environment. *See Kunin v. Sears Roebuck & Co.,* 175 F.3d 289, 293 (3d Cir. 1999) (discrimination is the first requirement necessary to prove a hostile work environment claim); *Anderson v. Boeing Co.*, No. 15-3073, 2016 WL 9446648, *24 (E.D. Pa. Aug. 30, 2016) (non-discriminatory layoff that resulted from a RIF could not support a hostile work environment claim); *see also Childs-Pierce v. Utility Workers Union of Am.*, 383 F. Supp. 2d 60, 78-79 (D.D.C. 2005) (finding plaintiff could not rely on a suspension as evidence of hostile work environment when the suspension "was a legitimate non-discriminatory act brought about by plaintiff's own misconduct.") (emphasis in original).

Defendants' decision to terminate Griswold's employment was not pretextual for the reasons articulated in Section V.A. *supra*.  Therefore, she should not be permitted to rely on her termination as evidence of a hostile work environment because the termination was a legitimate, non-discriminatory act brought about by AAHS' bankruptcy filing and HUH's subsequent closure. Moreover, Griswold's termination cannot be considered part of the same alleged hostile work environment because it was not initiated by Hamilton, Teufel, Kalbach, or Shannon—the individuals Griswold claims created and/or condoned an alleged hostile work environment for female physicians.  The record demonstrates that almost all of the faculty that composed DUCOM's emergency medicine department in June of 2019 were separated, including many of Griswold's male colleagues; and that the key decisionmakers treated Griswold no differently than any other male faculty member when making termination decisions.  Because Griswold's termination is not an actionable basis for a hostile work environment claim, Defendants are entitled

17

to summary judgment on Counts I through III of the Complaint to the extent it is predicated on Griswold's termination.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion and enter judgment in Defendants' favor on Counts I, II, and III to the extent they are predicated on the adverse action of termination.

Respectfully submitted,

**BUCHANAN INGERSOLL & ROONEY**

/s/ Charlene A. Barker Gedeus
Charlene A. Barker Gedeus, I.D. No. 317896
Monica L. Simmons, Esquire, I.D. No. 323605
Two Liberty Place
50 S. 16th Street, Suite 3200
Philadelphia, PA 19102-2555
*Attorneys for Defendants*