IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SHARON GRISWOLD, MD MPH** | |
| Plaintiff, | **CIVIL ACTION NO. 2:22-cv-00568** |
| v. | |
| **DREXEL UNIVERSITY,** | |
| **and** | |
| **DREXEL UNIVERSITY COLLEGE OF MEDICINE** | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Respectfully Submitted,

**CONSOLE MATTIACI LAW, LLC**

Dated: July 19, 2023           By:     */s/ Rahul Munshi*
Rahul Munshi, Esquire
Jonathan D. Gilman, Esquire
1525 Locust Street, Ninth Floor
Philadelphia, PA 19102
(215) 545-7677

*Attorneys for Plaintiff,*
*Sharon Griswold*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................. ii

I.  INTRODUCTION .......................................................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................................................ 3

III.  BRIEF PROCEDURAL BACKGROUND .................................................................................. 3

IV.  STANDARD OF REVIEW ........................................................................................................... 4

V.  LEGAL ARGUMENT ................................................................................................................... 6

    A.  None Of Plaintiff's Claims (Including Those Related To Her
        Termination) Are Based On The Hahnemann Closure ............................................. 6

    B.  Plaintiff Was Terminated Under Circumstances Which Give Rise To An
        Inference Of Sex Discrimination .............................................................................. 9

        1.  Plaintiff has met her *prima facie* showing of sex discrimination ................... 10

        2.  Ample pretext evidence exists to allow a reasonable jury to disbelieve
            Drexel's stated reason and infer that Drexel harbored discriminatory
            animus against Plaintiff ................................................................................... 11

    C.  Plaintiff Was Terminated Under Circumstances Which Give Rise To An
        Inference Of Retaliation On The Basis Of Plaintiff's Complaints Of Sex
        Discrimination ........................................................................................................ 13

    D.  Plaintiff's Hostile Work Environment Claims Predicated On Termination
        Must Survive .......................................................................................................... 16

V.  CONCLUSION ........................................................................................................................... 17

## Table of Authorities

**Cases**                                                                                 **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................. 5

*Brown-Baumbach v. B&B Automotive, Inc.*,
    437 F. App'x 129 (3d Cir. 2011) ............................................................10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................5

*Doe v. C.A.R.S. Protection Plus, Inc.*,
    527 F.3d 358 (3d Cir. 2008) ........................................................... 4, 5, 6

*Gharzouzi v. Nw. Human Servs. of Pa.*,
    225 F. Supp. 2d 514 (E.D. Pa. 2002) ....................................................12

*Goosby v. Johnson & Johnson Med., Inc.*,
    228 F.3d 313 (3d Cir. 2000) ................................................................... 6

*Hooten v. Greggo & Ferrara Co.*,
    2012 U.S. Dist. LEXIS 143118 (D. Del. Oct. 3, 2012) .........................11

*Hunt v. Cromartie*,
    526 U.S. 541 (1999) ................................................................................. 5

*Idahoan Fresh v. Advantage Produce, Inc.*,
    157 F.3d 197 (3d Cir. 1998) ...................................................................6

*Kachmar v. Sungard Data Sys., Inc.*,
    109 F.3d 173 (3d Cir. 1999) .................................................................13

*Leaphart v. Am. Friends Serv. Committee*,
    2008 U.S. Dist. LEXIS 85530 (E.D. Pa. Oct. 23, 2008) ......................... 5

*Mandel v. M&Q Packaging Corp.*,
    706 F.3d 157 (3d Cir. 2013) .................................................................17

*Marzano v. Computer Science Corp.*,
    91 F.3d 497 (3d Cir. 1996) .....................................................................5

*Mavrinac v. Emergency Med. Ass'n of Pittsburgh*,
    2007 U.S. Dist. LEXIS 73526 (W.D. Pa. Oct. 2, 2007) .......................16

*Mellett v. City of Phila.*,
    2022 U.S. Dist. LEXIS 116514 (E.D. Pa. July 1, 2022) ........................................................16

*Monaco v. Am. Gen. Assurance Co.*,
    359 F.3d 296 (3d Cir. 2004) ........................................................10

*Oakley v. Orthopedic Assocs. of Allentown, Ltd., et al.*,
    742 F. Supp. 2d 601 (E.D. Pa. 2010) ........................................................ 5

*Opsatnik v. Norfolk S. Corp.*,
    335 F. App'x 220 (3d Cir. 2009) ........................................................10

*Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*,
    470 F.3d 535 (3d Cir. 2006) ........................................................10

*Smith v. Pittsburgh Gage & Supply Co.*,
    464 F.2d 870 (3d Cir. 1972) ........................................................ 5

*Stewart v. Rutgers Univ.*,
    120 F.3d 426 (3d Cir. 1997) ........................................................6

*Tasco v. IBEW*,
    2013 U.S. Dist. LEXIS 17918 (E.D. Pa. Feb. 8, 2013) ........................................................10

*Varallo v. Elkins Park Hosp.*,
    63 F. App'x 601 (3d Cir. 2003) ........................................................9, 10

*Yarnall v. Phila. Sch. Dist.*,
    57 F. Supp. 3d 410 (E.D. Pa. 2014) ........................................................17

*Zelesnick v. Temple Univ. Health Sys.*,
    2021 U.S. Dist. LEXIS 10139 (E.D. Pa. Jan. 19, 2021) ........................................................12

**Statutes**

42 U.S.C. § 2000e, *et seq.* ........................................................3
43 P.S. § 951, *et seq.* ........................................................3
Phila. Code § 9-1101, *et seq.* ........................................................3

**Other**

Fed. R. Civ. P. 56 ........................................................ 4

I.      **INTRODUCTION**

Plaintiff, Dr. Sharon Griswold ("Dr. Griswold" or "Plaintiff"), through her undersigned counsel, hereby opposes the Motion for Partial Summary Judgment ("Partial Motion") filed by Defendants, Drexel University and Drexel University College of Medicine ("Drexel" or "Defendants") on Plaintiff's claims "to the extent they are predicated on the adverse action of termination."

Under **Drexel's** framing of this case, Defendants **terminated** Plaintiff's employment solely because Hahnemann University Hospital ("Hahnemann") closed in the Summer of 2019. Drexel argues that Plaintiff, therefore, cannot challenge the decision to **terminate** her employment because she was simply subjected to an across-the-board reduction in force ("RIF") which impacted every clinical faculty member at Drexel equally and without regard to sex, gender, or protected activity.  Drexel moves for summary judgment exclusively on these grounds that the Hahnemann closure **automatically** resulted in Plaintiff's termination, as well as the terminations of every Drexel-employed physician who had clinical responsibilities at Hahnemann.  Separately, Drexel specifically does **not**, however, move for summary judgment on "Defendants' decision not to rehire her or otherwise retain her as the director of their master's program in Medical and Healthcare Simulation."  Defs.' Partial Mot. [Doc. No. 28-3] at ECF pp. 9-10.

Drexel's Partial Motion is built on an incorrect foundation and muddles the issues in this litigation. The Hahnemann closure **did not** result in the automatic termination of Plaintiff's employment with Drexel.  As Drexel itself concedes, a significant portion of Plaintiff's job duties and salary did *not* relate to or derive from Hahnemann **in any way, shape, or form** (unlike many other employees whose job functions and salary were 100% predicated on

Hahnemann's existence). Undisputedly, **40%** of Plaintiff's job duties as an employee of Drexel—and, notably, **40%** of her total salary—related to her significant responsibility of serving as Director of Defendants' Master of Science in Medical and Healthcare Simulation ("MSMS") program, which was housed outside of the Department of Emergency Medicine and undeniably had **nothing** to do with Hahnemann. Drexel's decision to terminate Plaintiff's employment was **not** an inevitable consequence of the Hahnemann closure—it was a decision that was **made**, and specifically against Plaintiff. The facts do not support Drexel's attempts to hide behind the Hahnemann closure and avoid liability for discriminatorily and retaliatorily terminating Plaintiff's employment.

To be clear, Plaintiff is not arguing, and has not argued, that the decision to remove her clinical responsibilities at Hahnemann was discriminatory or retaliatory. Plaintiff does not challenge that those job duties were eliminated exclusively due to the closure of Hahnemann in 2019. Plaintiff does **not** concede, however, that the closing of Hahnemann is a legitimate, non-discriminatory and non-retaliatory reason **for terminating her employment with Drexel**. To the contrary, the record contains substantial evidence that: (1) **all** of the Drexel-employed physicians besides Plaintiff who wore multiple hats at Drexel **remained employed by Drexel** notwithstanding the elimination of their clinical responsibilities; (2) **all** of the Drexel-employed physicians from the Department of Emergency Medicine who were retained are males; (3) Plaintiff's MSMS program was entirely funded and housed outside of the Department of Emergency Medicine and was not impacted in any way by the closure of Hahnemann; and (4) the reason why Plaintiff was intentionally blocked from remaining in her long-standing Director of MSMS role was that she filed a Complaint of Discrimination and Drexel's Office of General

Counsel slow-walked an unfounded investigation into Plaintiff by way of simply running out the clock.

Because the record contains ample evidence from which a jury could conclude that Plaintiff's sex and complaints of sex discrimination motivated Drexel's discriminatory, harassing, and retaliatory discharge of Plaintiff, Drexel's Partial Motion must be denied. Plaintiff also sets forth additional claims of discriminatory hostile work environment, retaliatory hostile work environment, and failure to promote, which Defendants concede must survive. Drexel's failure to move for summary judgment on these claims in its Partial Motion is an evident concession of the strength of those claims such that Plaintiff should proceed to trial on them as well.

## II.     STATEMENT OF FACTS

Plaintiff incorporates her Response to Defendants' Statement of Facts in Support of Defendants' Motion for Partial Summary Judgment ("PRF") and Additional Statement Of Material Facts In Support Of Her Opposition To Defendants' Motion For Partial Summary Judgment ("PSOMF").

## III.    BRIEF PROCEDURAL BACKGROUND

On February 14, 2022, after properly exhausting her administrative prerequisites for the commencement of this action, Plaintiff filed the instant lawsuit against Drexel, alleging claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").   *See generally* Compl. [Doc. No. 1].  Specifically, Plaintiff has alleged the following claims against Drexel: (1) discriminatory hostile work environment (both pre-termination and related to her

eventual termination); (2) retaliatory hostile work environment (both pre-termination and related to her eventual termination); (3) failure to promote; (4) wrongful discharge due to sex discrimination; and (5) retaliatory discharge based on Plaintiff's complaints of sex discrimination and retaliation.  *See id.*

In the instant Partial Motion, Drexel is moving for partial summary judgment on Plaintiff's hostile work environment, wrongful discharge, and retaliatory discharge claims *only*, and even then, solely to the extent they are "predicated on [Plaintiff's] termination." Defs.' Partial Mot. [Doc. No. 28-3] at ECF p. 8.

Plaintiff addresses Defendants' argument in turn, primarily as a means of clarifying that the Hahnemann closure did ***not*** mean that Plaintiff's employment with Drexel was terminated or eliminated (but rather, only a *portion* of her job duties)—and, therefore, disputed material facts exist from which a reasonable jury could conclude that Plaintiff's sex and complaints of sex discrimination motivated Drexel's discriminatory, harassing, and retaliatory discharge of Plaintiff.

## IV.   <u>STANDARD OF REVIEW</u>

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  If there are any genuine issues of material fact such that a reasonable jury could return a verdict for the plaintiff, summary judgment should be denied. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

At the summary judgment stage, the role of the trial judge is to determine whether or not there is a genuine dispute of material fact; "[c]redibility determinations, the weighing of the

evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  On a motion for summary judgment, a "district court must resolve all inferences, doubts, and issues of credibility against the moving party." *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir. 1972) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970)).

The Third Circuit has made clear that "[t]he burden of persuasion on summary judgment remains unalterably with the employer as movant." *C.A.R.S.,* 527 F.3d at 362.  The employer retains the burden of persuading the Court that, "even if all the inferences which would reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, *no reasonable jury* could find in the plaintiff's favor." *Marzano v. Computer Science Corp.,* 91 F.3d 497, 502 (3d Cir. 1996) (emphasis added).  Thus, if there is any record evidence from which a reasonable inference may be drawn in favor of the non-moving party, then "the moving party simply cannot obtain summary judgment." *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n.2 (1986).

Even when the facts are not in dispute, summary judgment must be denied if competing inferences can be drawn from the undisputed facts on material issues.  *Hunt v. Cromartie,* 526 U.S. 541, 552-53 (1999).  "Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment." *Leaphart v. Am. Friends Serv. Committee,* 2008 U.S. Dist. LEXIS 85530, at *1 (E.D. Pa. Oct. 23, 2008).  At the summary judgment stage, "all that is required [for the non-moving party to survive the motion] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve [at trial] the parties' differing versions of the truth." *Oakley v. Orthopedic Assocs. of Allentown, Ltd., et al.,* 742 F. Supp. 2d 601, 604 (E.D. Pa. 2010).

Summary judgment is to be used sparingly in employment discrimination cases. *C.A.R.S.,* 527 F.3d at 369. The Third Circuit urges particular caution about granting summary judgment to an employer when intent is at issue, particularly in discrimination cases. *Goosby v. Johnson & Johnson Med., Inc.,* 228 F.3d 313, 321 (3d Cir. 2000); *see also Stewart v. Rutgers Univ.,* 120 F.3d 426, 431 (3d Cir. 1997) (explaining that the summary judgment standard is to be "applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues."). Additionally, the relevant laws in this matter—Title VII, the PHRA, and the PFPO—are remedial statutes, and therefore must be interpreted broadly to protect the rights of individuals. *Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197, 202 (3d Cir. 1998). As a result, and as set forth below, Drexel's Partial Motion should be denied.

## V.   LEGAL ARGUMENT

### A.   *None Of Plaintiff's Claims (Including Those Related To Her Termination) Are Based On The Hahnemann Closure.*

To be clear, Plaintiff ***does not*** dispute that she and hundreds of other clinical faculty were notified via letter on July 18, 2019, that their Hahnemann-related clinical responsibilities (*i.e.*, taking care of patients at Hahnemann) with Drexel would officially end on January 14, 2020 due to the Hahnemann closure. PSOMF ¶ 39. Plaintiff is not arguing, and has not argued, that the removal of her clinical duties and responsibilities as a result of the Hahnemann closure was discriminatory or retaliatory.

As Drexel itself ***admits***, however, Plaintiff (unlike many other clinicians at the time, whose jobs and salary were 100% reliant upon Hahnemann's existence) wore several "hats" at Drexel, many of which were wholly unrelated to Hahnemann. Besides her clinical work at Hahnemann, Plaintiff was a Professor in the Department of Emergency Medicine, Director of the Simulation Center within the Department of Emergency Medicine, Professor of Anesthesiology

and Perioperative Medicine, and also founded and served as the Director of the Master of Science in Medical and Healthcare Simulation ("MSMS") program at Drexel.  PSOMF ¶¶ 6, 8, 10, 13.  Although the MSMS program originated within the Department of Emergency Medicine, since approximately 2015, the MSMS program was administered through the Graduate School of Biomedical Sciences and Professional Studies ("Graduate School").  PSOMF ¶ 14.

As a result of the various capacities in which Plaintiff served, Drexel compensated Plaintiff through multiple sources: approximately ***sixty percent (60%)*** of Plaintiff's salary was allocated from the Emergency Medicine Department's budget to compensate her for work as Professor of Emergency Medicine and clinician; the remaining ***forty percent (40%)*** of Plaintiff's salary came from the Graduate School for her work as Director of the MSMS program.  PSOMF ¶¶ 20, 42.  Drexel's attempts to lead this Court to believe that Plaintiff's employment was solely predicated on Hahnemann's existence is, therefore, a farce.  Instead, Plaintiff was terminated *because* Drexel failed to permit Plaintiff to maintain her non-clinical employment and job title affiliations, which were ***entirely separate*** from the Hahnemann closure.

For instance, it is ***undisputed*** that the closure of Hahnemann had ***no impact*** on the viability of the tuition-generating MSMS program that Plaintiff ran at Drexel.  PSOMF ¶ 43.  In other words, the MSMS program was going to continue with practicum courses notwithstanding the closure of Hahnemann because the MSMS program was not affiliated with Hahnemann in any way, nor was it funded by or through Hahnemann.  PSOMF ¶ 44.  Even in the Fall of 2019, when Hahnemann had already closed its doors to patients and clinical work, Plaintiff was still running the MSMS program as a Drexel employee.  PSOMF ¶¶ 41, 55.

On June 27, 2019—less than two weeks after the letter regarding the Hahnemann closure was sent to clinicians (including Plaintiff)—Dr. Elisabeth Van Bockstaele, the Dean of the

Graduate School, emailed all Graduate School faculty (including Plaintiff) explaining that "[t]he finances and operations of Drexel University are separate from Hahnemann University Hospital" and that Drexel had "contingency plans in place to ensure there is no disruption to the education of our graduate and medical students and their hospital-based clinical rotations." PSOMF ¶¶ 45-46. Dr. Paul McGonigle, as Director of Interdisciplinary and Career-Oriented Programs ("ICO") within the Graduate School and Plaintiff's direct supervisor in connection with the MSMS program, testified to his assumption that (based on the above email from Dr. Van Bockstaele) that Plaintiff's employment with Drexel as Director of MSMS would be sustained regardless of Hahnemann's closure. PSOMF ¶ 47. Plaintiff also received numerous assurances that Drexel-employed physicians who had a substantial part of their salary or roles within Drexel (*i.e.*, independent of their clinical work at Hahnemann) would have their contracts renegotiated and would maintain employment with Drexel, and that Plaintiff could continue as a Drexel employee in her role as Director or MSMS at the same salary she had already been receiving (*i.e.*, 40% of her total Drexel salary). PSOMF ¶¶ 48-54.

Plaintiff was not in a unique position in having several different "hats" as part of her employment at Drexel. Dr. Richard Hamilton (male) (Plaintiff's supervisor in her roles as Professor of Emergency Medicine, Professor of Anesthesiology and Perioperative Medicine, and Director of the Simulation Center) only had about half of his job duties involving clinical work and through Hahnemann, and yet he still maintained his affiliation with Drexel even after receiving the July 2019 letter that his clinical duties through Hahnemann would end. PSOMF ¶¶ 11, 100-107. Dr. Ted Corbin (male), like Plaintiff, also was a hybrid employee with both clinical work at Hahnemann and running a separate academic program (Healing Hurt People) through a different school at Drexel, and yet he was able to keep his faculty appointment and "maintain his

employment as a Drexel University employee" after receiving the July 2019 letter that his clinical duties would cease since the viability of his academic program was wholly unrelated to the closing of Hahnemann. PSOMF ¶¶ 108-114. Furthermore, Dr. Michael Pasirstein (male) also held certain non-clinical responsibilities that were independent of Hahnemann (in addition to his clinical work at Hahnemann), and yet was still able to maintain his employment with non-clinical duties and faculty appointment despite receiving the July 2019 letter. PSOMF ¶¶ 115-118.

### B. Plaintiff Was Terminated Under Circumstances Which Give Rise To An Inference Of Sex Discrimination.

As a preliminary matter, Drexel attempts to splice Plaintiff's singular wrongful discharge claim into two separate actions: (1) Plaintiff's termination; and (2) Drexel's decision not to rehire or otherwise retain her as the Director MSMS. Defs.' Partial Mot. [Doc. No. 28-3] at ECF pp. 9-10. The separation of Plaintiff's claim into two is *inapplicable* here, since Drexel's argument is based on the false premise that Plaintiff's employment (*i.e.* job duties and salary) was solely dependent upon the existence of Hahnemann and, therefore, the notification of its closure on July 18, 2019 meant that her position at Drexel was being fully eliminated. As explained in Section V.A. above, Plaintiff's termination *could not have been* predicated solely on the Hahnemann closure since she wore many different "hats", and a significant portion of her salary did not relate to or stem from Hahnemann. Accordingly, Drexel's posturing of this case as being a reduction in force leading to the alleged full elimination of her position and, separately, Drexel's decision "not to rehire her or otherwise retain her" as Director of MSMS, paints an inaccurate picture of this case.[1]

---

[1] None of the cases cited by Drexel are applicable to the instant matter. For instance, in *Varallo v. Elkins Park Hosp.*, 63 F. App'x 601 (3d Cir. 2003), the court noted that the plaintiff's wrongful termination claim was based on

### 1. *Plaintiff has met her* **prima facie** *showing of sex discrimination.*

Regarding Plaintiff's *prima facie* case of disparate treatment, Drexel only contends that Plaintiff cannot show that she was terminated under any circumstances that support an inference of discrimination.[2]  Defs.' Partial Mot. [Doc. No. 28-3] at ECF p. 11.  But Drexel inappropriately focuses *only* on the evidence regarding its decision to relieve Plaintiff of her clinical responsibilities as a result of the Hahnemann closure, without acknowledging, for instance, the undisputed evidence regarding Plaintiff's other significant job responsibilities that she was assured would continue past Hahnemann's closure.  Despite those assurances, Drexel determined that Plaintiff's employment would end **in full** in January 2020, while three of her male counterparts who also had other significant non-clinical responsibilities at Drexel—Dr. Richard Hamilton, Dr. Ted Corbin, and Dr. Michael Pasirstein—all maintained their employment after the Hahnemann closure.

Although Drexel attempts to distinguish each of these three male physicians from being "similarly situated" to Plaintiff, such argument is to no avail.  To be valid comparators, employees need not be "identically situated," but they must be similar in 'all relevant respects.'" *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (citation omitted).  In determining whether employees are similarly situated, the court is required to undertake "a fact-intensive inquiry based on a whole constellation of factors." *Monaco v. Am. Gen. Assurance*

---

plaintiff's position being fully "eliminated," and therefore, defendant's failure to rehire her into *another* position was a separate claim.  *Id.* at 602.  Furthermore, *Tasco v. IBEW*, 2013 U.S. Dist. LEXIS 17918 (E.D. Pa. Feb. 8, 2013) does not stand for the proposition that a failure to rehire claim is "separate and distinct" from a discharge claim, as Drexel contends.  In fact, that was an argument made by the defendant in that case which the court *dismissed* and noted that the defendant "misinterprets Plaintiff's argument regarding Defendant's failure to rehire her."  *Id.* at *11.

[2] To establish a *prima facie* case of sex discrimination under Title VII, the plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment decision; and (4) circumstances exist that give rise to an inference of unlawful discrimination, or that similarly situated male employees were treated more favorably.  *Brown-Baumbach v. B&B Automotive, Inc.*, 437 F. App'x 129, 134 (3d Cir. 2011); *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).

*Co.*, 359 F.3d 296, 306 (3d Cir. 2004).   Some of the factors to be considered include: "job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace."   *Id.* at 305; *see also Hooten v. Greggo & Ferrara Co.*, 2012 U.S. Dist. LEXIS 143118, at *10 (D. Del. Oct. 3, 2012) ("Plaintiff must identify employees who share characteristics that are relevant to the facts of this case.").

The relevant characteristics that make Dr. Hamilton, Dr. Corbin, and Dr. Pasirstein "similarly situated" to Plaintiff are as follows: (i) they each had faculty appointments through the Drexel Department of Emergency Medicine; (ii) they each wore several different "hats" (many of which were in addition to, and independent of, their clinical responsibilities at Hahnemann); and (iii) they each received the July 2019 letter from Drexel regarding the Hahnemann closure and the cessation of their clinical responsibilities due to such closure.   PSOMF ¶¶ 100-118.   Also of particular note, Dr. Corbin (like Plaintiff) ran a separate academic program that was under the umbrella of a different school at Drexel; thus, while his clinical duties ceased as a result of Hahnemann's closure, "**he was able to maintain his employment as a Drexel University** employee because his funding went into a different college, even though the College of Medicine stopped."   PSOMF ¶¶ 109-110.   Despite being similarly situated, these three ***male*** physicians were each allowed to keep their employment and their faculty appointments after the Hahnemann closure, while Plaintiff was terminated.

> ### 2. *Ample pretext evidence exists to allow a reasonable jury to disbelieve Drexel's stated reason and infer that Drexel harbored discriminatory animus against Plaintiff.*

Finally, and contrary to Drexel's contention, the record contains ample evidence of pretext and bias in connection with Plaintiff's termination.   "In the context of a summary judgment proceeding, the question is not whether the plaintiff proves pretext, but rather whether

the plaintiff raises a genuine issue of fact regarding pretext." *Zelesnick v. Temple Univ. Health Sys.*, 2021 U.S. Dist. LEXIS 10139, at *23 (E.D. Pa. Jan. 19, 2021).  Relatedly, to survive summary judgment, "a plaintiff need not prove that the employer's purported reason for its actions was false," but, rather, "must criticize it effectively enough so as to raise a doubt as to whether it was the true reason for the action." *Gharzouzi v. Nw. Human Servs. of Pa.*, 225 F. Supp. 2d 514, 544 (E.D. Pa. 2002).  As the Third Circuit has recognized, there will seldom be "smoking gun" evidence as to the employer's mental processes; accordingly, "the proper inquiry is whether evidence of inconsistencies and implausibilities in the employer's proffered reasons for discharge reasonably *could* support an inference that the employer did not act for [illegal] reasons, not whether the evidence *necessarily* leads to [the] conclusion that the employer did act for [illegal] reasons." *Id.* (quoting *Josey v. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993)) (emphasis in original).

Here, Plaintiff has set forth ample evidence from which a reasonable jury could either disbelieve Drexel's stated reason(s) for terminating Plaintiff *or* believe that Drexel's decision was motivated by Plaintiff's sex.  As mentioned in Section V.A. above, it is undisputed that the closure of Hahnemann had no impact on the viability of the MSMS program that Plaintiff ran at Drexel, that Plaintiff received numerous assurances that Drexel-employed physicians who had a substantial part of their salary or roles within Drexel (*i.e.*, independent of their clinical work at Hahnemann) would have their contracts renegotiated and would maintain employment with Drexel, and that Plaintiff could continue as a Drexel employee in her role as Director or MSMS at the same salary she had already been receiving (*i.e.*, 40% of her total Drexel salary).  PSOMF ¶¶ 43, 48-54.  This, in combination with the fact that three other male comparators of Plaintiff were able to maintain their employment and faculty appointments with Drexel—while Plaintiff

was told she was terminated simply because of the Hahnemann closure—pokes a gaping hole in Drexel's incomplete and implausible defense.

### C. Plaintiff Was Terminated Under Circumstances Which Give Rise To An Inference Of Retaliation On The Basis Of Plaintiff's Complaints Of Sex Discrimination.

Drexel next argues that it is entitled to summary judgment to the extent that Plaintiff alleges that she was the "victim of retaliatory discharge." Defs.' Partial Mot. [Doc. No. 28-3] at ECF p. 19. Drexel concedes for purposes of its Partial Motion that Plaintiff engaged in protected activity (although focusing only on concerns Plaintiff raised in 2018 about communication issues with the Department of Emergency Medicine and how the rules were different between men and women in the department).[3]

Because of Drexel's incorrect assumption that Plaintiff's termination decision was made in July 2019—when she received the letter that her clinical duties were ceasing due to the Hahnemann closure in January 2020—Drexel misses the mark entirely regarding Drexel's retaliatory discharge claim.

Besides raising several complaints in 2018 regarding gender discrimination and hostile work environment by Keith Kalbach, Department of Emergency Medicine Administrator, Jamie Teufel, EMS Program Director within the Department of Emergency Medicine, and Dr. Hamilton (who supervised Kalbach and Teufel, and allowed them to foster a boys' club atmosphere within the Department of Emergency Medicine and failed to take appropriate action despite his knowledge of the same), PSOMF ¶¶ 21-38, Plaintiff *also* engaged in protected

---

[3] Title VII provides a remedy for employees who are discharged by their employer for engaging in activity that is protected under the statute. To prevail on a claim of retaliatory discharge, Plaintiff must demonstrate (1) that she engaged in protected activity; (2) that her employer took an adverse action against her; and (3) that the adverse action was in retaliation for the protected activity she engaged in. *Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1999).

activity while she was still running the MSMS program as a Drexel employee by raising further complaints of sex discrimination and retaliation in late 2019. *See* PSOMF ¶¶ 55-59.

Shortly after complaining to Drexel in late September 2019, on October 29, 2019, Plaintiff was wrongfully accused of engaging in a public safety incident and accused of making disparaging remarks about certain colleagues (*i.e.*, Kalbach, Teufel, and Hamilton) and allegedly threatening to burn down the building. PSOMF ¶¶ 60-62. Despite never engaging in any public safety threat, on October 29, 2019, Plaintiff was placed on administrative leave pending investigation into the alleged events and walked out of the building by Public Safety, after which Plaintiff was restricted from having any contact with staff, program, faculty, or students. PSOMF ¶¶ 63-64. Even though she remained employed by Drexel (including as Director of the MSMS program), once she was placed on administrative leave, Dr. Van Bockstaele and Melissa Richman (Executive Director of the Graduate School) were instructed by HR to have no contact with Plaintiff until the investigation was completed—even though the option of remaining at Drexel was on the table for Plaintiff, and Richman intended to continue talking with Plaintiff about various options for Plaintiff to remain employed before being told by HR to cease all contact with Plaintiff. PSOMF ¶¶ 65-66, 69-70, 72-73.

The investigation into the allegations regarding Plaintiff's administrative leave itself then *languished* because Public Safety was instructed by Drexel's Office of General Counsel **to hold off on interviewing Plaintiff since she had filed a Charge of Discrimination with the Pennsylvania Human Relations Commission** ("PHRC") on November 10, 2019 (of which the Office of General Counsel was made aware)—which detailed the gender discrimination, retaliation, and hostile work environment to which she had been subjected by Drexel. PSOMF ¶¶ 75-76, 79. As of November 10, 2019, no decision had been made that Plaintiff would not be

remaining in her role as Director of the MSMS program.  PSOMF ¶ 78.  Detective Charles Lashley of Drexel's Public Safety Department, who was tasked with leading the investigation, did not interview Plaintiff until December 17, 2019, **more than six weeks** following the alleged incident which resulted in Plaintiff's placement on administrative leave, and only **because Drexel's Office of General Counsel told public safety to hold off due to "a lawsuit being filed by Griswold."**  PSOMF ¶¶ 80-83.  After Detective Lashley learned from Plaintiff's interview that the allegations leading to her administrative leave were largely unfounded, Detective Lashley then forwarded his notes and the results of the interview to the Office of General Counsel and HR to determine what, if any, next steps needed to be taken.  PSOMF ¶¶ 84-88.

With the passage of almost one month and still remaining on administrative leave (and simultaneously maintaining her employment with Drexel, including with respect to her other non-clinical responsibilities that were unrelated to the soon-to-be-ceased clinical duties), on January 16, 2020, Katie Shannon, HR Business Partner, sent a letter to Plaintiff (copying Dr. Van Bockstaele) stating that **"Public Safety has concluded their investigation and has determined that there were no findings,"** that Plaintiff's administrative leave ended effective January 14, 2020 due to the result of the conclusion of the investigation, and further explained that Plaintiff's employment with Drexel in the Department of Emergency Medicine had been terminated on January 14 "due to the closure of Hahnemann University Hospital."  PSOMF ¶¶ 92-94.  The letter makes no mention of Plaintiff's role as Director of MSMS, for which Plaintiff received 40% of her salary and dedicated 40% of her time and efforts.  PSOMF ¶ 95. Meanwhile, because Public Safety never heard back from the Office of General Counsel or HR, eventually on January 24, 2020, Public Safety marked the matter closed/cleared and ended the investigation. PSOMF ¶ 91.  Accordingly, material disputed facts exist regarding the causal link

between Plaintiff's complaints in 2018 and 2019, leading up to Plaintiff's adverse employment action (*i.e.*, the ultimate termination of employment on January 14, 2020), such that summary judgment cannot be granted as to Plaintiff's claim of retaliatory discharge. *See Mellett v. City of Phila.*, 2022 U.S. Dist. LEXIS 116514, at *11 (E.D. Pa. July 1, 2022) ("The Court is hard pressed to see how causation could be destroyed by Defendant's own delay, otherwise it would improperly incentivize an employer to delay investigating a plaintiff's claims in order to escape liability.").

### D. Plaintiff's Hostile Work Environment Claims Predicated On Termination Must Survive.

Drexel initially discusses how Plaintiff is attempting to introduce other non-termination discriminatory acts that she suffered during her tenure to prove her hostile work environment claims, under the continuing violations doctrine. Defs.' Mot. [Doc. No. 28-3] at ECF pp. 21-22. Despite Drexel's continued emphasis on the continuing violations doctrine, Drexel has **not** moved for summary judgment on any pre-termination discriminatory/retaliatory hostile work environment claims.[4]

Instead, Drexel's primary contentions as to why Plaintiff's termination cannot form part of her hostile work environment claims are because (i) Drexel allegedly has provided a legitimate, non-discriminatory reason for Plaintiff's termination, and (ii) Plaintiff cannot show that such reason is pretextual. Defs.' Mot [Doc. No. 28-3] at ECF p. 22.[5]   As previously

---

[4] To the extent this Court somehow finds that Drexel is moving for summary judgment on Plaintiff's pre-termination hostile work environment claims, such evidence can be used as background evidence in support of her subsequent discriminatory/retaliatory termination claims. *See Mavrinac v. Emergency Med. Ass'n of Pittsburgh*, 2007 U.S. Dist. LEXIS 73526, at *32–33 (W.D. Pa. Oct. 2, 2007) ("[E]vidence relating to time-barred claims can be introduced as background evidence for establishing the discriminatory nature of the timely claims, such as [] termination.  Furthermore, background evidence may show motive, intent, and a pattern and practice of discrimination." (citing *Morgan*, 536 U.S. at 113)).

[5] In order to bring a claim of hostile work environment under Title VII, a plaintiff must show: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination

explained in Sections V.A. and V.B., there is more than sufficient evidence showing that Drexel's reason for Plaintiff's termination (*i.e.*, the Hahnemann closure) not only provides an incomplete and inaccurate picture of Plaintiff's overall employment and ultimate termination, but also is pretextual.  Consequently, **all** of Plaintiff's hostile work environment claims should be presented to the jury, including those based on the pre-termination conduct to which Plaintiff was subjected as well as those related to her termination of employment.

**VI.     CONCLUSION**

As set forth above, Drexel falls woefully short of meeting its affirmative burden of demonstrating by admissible evidence, and with all inferences granted to Plaintiff, that no reasonable jury could find in Plaintiff's favor on the claims which are "predicated on her termination of employment."  Accordingly, Plaintiff respectfully requests that Drexel's Partial Motion be denied and that Plaintiff be permitted to proceed to trial on all of her claims (including those related to her termination).

Respectfully submitted,

**CONSOLE MATTIACI LAW, LLC**

Dated: July 19, 2023                         By:     */s/ Rahul Munshi*
                                                          Rahul Munshi, Esquire
                                                          Jonathan D. Gilman, Esquire
                                                          1525 Locust Street, Ninth Floor
                                                          Philadelphia, PA 19102
                                                          (215) 545-7676
                                                          *Attorneys for Plaintiff*

---

detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in like circumstances; and (5) the existence of *respondeat superior* liability.  *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). "[A] retaliatory hostile work environment mirrors the general hostile work environment test, except that the discrimination must be because of a protected activity, rather than a plaintiff's protected class." *Yarnall v. Phila. Sch. Dist.*, 57 F. Supp. 3d 410, 436 (E.D. Pa. 2014) (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006)).