IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHARON GRISWOLD, MD MPH** | : | CIVIL ACTION |
| *Plaintiff* | : | |
| | : | NO. 22-0568 |
| | : | |
| v. | : | |
| | : | |
| **DREXEL UNIVERSITY,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                              MARCH 1, 2024

# MEMORANDUM OPINION

**INTRODUCTION**

Plaintiff Sharon Griswold, M.D., M.P.H. ("Plaintiff") filed this employment discrimination action against her former employers Defendants Drexel University ("Drexel") and Drexel University College of Medicine ("DUCOM") (collectively, "Defendants"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. Cons. Stat. § 951, *et seq.*, and the Philadelphia Fair Practices Ordinance (the "PFPO"), Philadelphia Code § 9-1101, *et seq*.  Specifically, Plaintiff alleges that she was subjected to a hostile work environment, not promoted, and eventually terminated on the basis of her sex, and for making complaints of sex discrimination.

Before this Court is Defendants' motion for partial summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, in which Defendants seek judgment in their favor on Plaintiff's Title VII, PHRA, and PFPO claims to the extent those claims are predicated on Plaintiff's termination.[1]  Defendants argue that Plaintiff fails to establish a causal connection

---

[1]   Defendants do not seek judgment on these claims to the extent they are premised on other alleged adverse employment actions.

between her gender and protected activities and her termination. The issues raised in Defendants'

motion have been fully briefed and are ripe for disposition. For the reasons set forth herein,

Defendants' motion to partial summary judgment is granted, *in part*, and denied, *in part*.

**BACKGROUND**

When ruling on a motion for summary judgment, a court must consider all record evidence

and supported relevant facts in the light most favorable to the non-movant—here, Plaintiff. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196

(3d Cir. 2011). The facts relevant to the underlying motion are summarized as follows:[2]

> Plaintiff began her employment with Defendants in 2007. In her role as Associate Professor of Emergency Medicine, an academic appointment with DUCOM's Department of Emergency Medicine, Plaintiff was responsible for teaching medical students, residents, and fellows; performing clinical service and patient care at the former Hahnemann University Hospital ("Hahnemann"); and performing other duties as assigned and scheduled by the Chair of the Department. At the time of Plaintiff's termination, sixty percent (60%) of her salary came from the Department of Emergency Medicine for her work as both Professor of Emergency Medicine and clinician at Hahnemann. The remaining forty percent (40%) of Plaintiff's salary came from the Graduate School of Biomedical Sciences and Professional Studies for her work as Director of the Master of Science in Medical and Healthcare Simulation ("MSMS") program. Plaintiff's position as Director of the MSMS program was dependent on her maintaining an academic appointment with DUCOM.
>
> In September 2018, Plaintiff made several complaints of gender discrimination to the directors of her programs, her supervisor Dr. Richard Hamilton, Drexel's Human Resources Department ("HR"), and to the Office of Equality and Diversity (the "OED"). Following the complaints, Dr. Hamilton instructed Plaintiff to come to him about future conflicts she had with her colleagues and suggested she reach out to the colleagues of whom she complained to resolve their issues.
>
> Plaintiff received a letter dated July 18, 2019, informing her that Drexel's Emergency Medicine clinical practice at Hahnemann was closing and that as a result, her clinical and faculty employment would be terminated on January 14, 2020. Following the receipt of the letter, Plaintiff began talking with other faculty

---

[2] These facts are taken from the parties' briefs, exhibits, and statements of facts. (ECF 28, 29, 32). To the extent any facts are disputed, such disputes will be noted and, if material, construed in Plaintiff's favor pursuant to Rule 56.

members about her path forward and other potential appointments so that she could remain a DUCOM and Drexel faculty member and continue her position as Director of the MSMS program.

In September 2019, Plaintiff spoke with Katie Shannon in HR again about gender discrimination. Thereafter, Ms. Shannon reached out to the OED and wrote the following:

- Dr. Griswold feels that men are handled one way in the department and women another.
- She feels that some men, like Keith Kalbach and Jamie Teufel can do whatever they want and there are no consequences for them because they are men.
- Other people have brought up gender issues in the past but Dr. Hamilton hasn't done anything about it.
- Nothing has changed since we had the mediated conversation.
- She said she was told that "I should be a man because if I was then this wouldn't be happening[.]" I believe she said Keith and/or Jamie said this to her.
- There is no question in her mind that the issues in the department are gender related.

(ECF 29-13, Ex. 19, at pp. 13-14).

On October 29, 2019, Plaintiff was placed on administrative leave while DUCOM's Public Safety Department conducted an internal investigation relating to a potential safety violation involving Plaintiff. On November 8, 2019, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), alleging gender discrimination and that her being placed on administrative leave was retaliatory. Detective Charles Lashley of the Public Safety Department testified that Drexel's General Counsel Office "requested that [he] hold off the [public safety investigation] interview because a lawsuit was filed by [Plaintiff]." (Lashley Dep. Tr., ECF 29-14, at 58:12-14). While still on administrative leave, Plaintiff's employment with Defendants was terminated on January 14, 2020. Plaintiff did not retain her position as Director of the MSMS program and she was not rehired by Defendants in any capacity. On January 24, 2020, the Public Safety Department's investigation was marked closed.

**LEGAL STANDARD**

Rule 56 governs summary judgment motion practice. Fed. R. Civ. P. 56. Specifically, this Rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A

fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When evaluating a motion under Rule 56, the court must view the evidence in the light most favorable to the nonmoving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. After the movant has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the movant's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, conclusory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), or rest on the allegations in the pleadings, *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and, either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

**DISCUSSION**

As noted, Defendants move for summary judgment on Plaintiff's gender discrimination, retaliation, and hostile work environment claims to the extent they are based on her termination, arguing primarily that Plaintiff cannot make a *prima facie* case of discrimination or retaliation because she fails to establish a causal connection between her gender and protected activities and her termination. Each of these challenged claims is addressed in turn.

*Discriminatory Termination Claim*

Plaintiff alleges that Defendants unlawfully terminated her employment because of her gender. Title VII, the PHRA, and the PFPO, prohibit an employer from discharging an employee on the basis of the employee's sex.[3] *See* 42 U.S.C. § 2000e-2(a)(1); 43 Pa. Cons. Stat. § 955(a); Phila. Code § 9-1103(1)(a).[4] Sex discrimination claims arising under Title VII, the PHRA, and the PFPO are assessed using the same elements and burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Tomaszewski v. City of Phila.*, 460 F. Supp. 3d 577, 592 (E.D. Pa. 2020). Under *McDonnell Douglas*, "[t]he complainant . . . must carry the

---

[3] Courts analyze gender discrimination claims under statutes that prohibit discrimination on the basis of sex. *See e.g.*, *Burton v. Teleflex*, 707 F.3d 417, 426, 431-32 (3d Cir. 2013) (analyzing the plaintiff's "gender" discrimination claims filed pursuant to Title VII and the PHRA when the relevant statutes prohibit discrimination on the basis of "sex").

[4] Title VII provides:

> It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]

42 U.S.C.A. § 2000e-2(a)(1). The PHRA similarly makes it unlawful "[f]or any employer because of the . . . sex . . . of any individual . . . to discharge from employment such individual[.]" 43 Pa. Cons. Stat. § 955(a). The PFPO also makes it unlawful "to deny or interfere with the employment opportunities of an individual based upon such individual's . . . sex[,]" including "for any employer to refuse to hire, discharge, or otherwise discriminate against any individual." Phila. Code § 9-1103(1)(a).

5

initial burden under the statute of establishing a prima facie case of . . . discrimination." 411 U.S. at 802. Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* If the defendant satisfies this step, the burden shifts back to the plaintiff to show that the legitimate reason(s) proffered by the defendant is merely a pretext for discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 804-05 (3d Cir. 1994).

To establish a *prima facie* case of discrimination, Plaintiff must show that "(1) she is a member of a protected class; (2) she was qualified for her position; (3) the particular disciplinary measure was an adverse employment action; and (4) the circumstances of the disciplinary measure give rise to an inference of discrimination." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015) (internal citation omitted). Defendants do not dispute, at this stage of litigation, that Plaintiff is a member of a protected class, qualified for the position, or that her termination was an adverse employment action. Only the fourth element — whether the circumstances of Plaintiff's termination give rise to an inference of discrimination — is in dispute.

To support an inference of discrimination, a plaintiff may present "comparator evidence, evidence of similar [gender] discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting [] animus." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010). Comparator evidence is "evidence that [the employer] treated 'similarly situated' individuals not within plaintiff's protected class more favorably than it treated plaintiff." *See Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 542 (E.D. Pa. 2016) (quoting *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881 (3d Cir. 2011)). When using comparator evidence, "[t]he plaintiff has the burden of demonstrating that similarly situated persons were treated differently." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639,

645 (3d Cir. 1998). For a person to be "similarly situated," the person must be similar in "all relevant respects." *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009). "Employees are similarly situated when they have similar responsibilities and are held to similar standards . . . [and] their conduct on the job-or misconduct-is similar in nature." *Oakley v. Orthopaedic Assocs. of Allentown, Ltd.*, 742 F. Supp. 2d 601, 608 (E.D. Pa. 2010) (internal citations omitted). "[S]ummary judgment is appropriate where there is no evidence from which a jury could conclude the parties were similarly situated." *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp. 2d 517, 526 (E.D. Pa. 2014).

To meet the summary judgment burden as to the requisite inference of discrimination, Plaintiff solely points to three *male* comparators with dual roles who were not terminated despite the Hahnemann closure: Dr. Richard Hamilton, Dr. Ted Corbin, and Dr. Michel Pasirstein. (Pl.'s Br., ECF 29, at p. 10-11). Plaintiff argues that, like her, each of these male employees held dual roles as clinicians at Hahnemann and as directors of other DUCOM or Drexel programs, yet — unlike Plaintiff — they were permitted to retain their secondary positions after the Hahnemann closure.

Defendants argue that Plaintiff's reliance on this purported comparator evidence is misplaced because the three employees she relies on as comparators were not similarly situated or treated more favorably. For example, Defendants argues that Dr. Hamilton is not an appropriate comparator because he, like Plaintiff, was terminated on January 14, 2020. Since Plaintiff and Dr. Hamilton were not treated differently with respect to termination, Dr. Hamilton cannot serve as a comparator on this issue.[5]

---

[5] Dr. Hamilton was rehired in February 2020. Defendants, however, do not move for summary judgment on Plaintiff's failure to rehire claim.

After the Hahnemann closure, Dr. Corbin maintained his employment with Drexel's Department of Emergency Medicine where he led a program called Healing Hurt People. Dr. Corbin, however, held an associate dean position within the College of Public Health, unlike Plaintiff, and the program he led received sufficient grant funding to sustain itself, while the MSMS program that Plaintiff led did not. Dr. Pasirstein retained his faculty appointment as Clerkship Director for the Emergency Medicine clerkship program following the Hahnemann closure. Dr. Pasirstein, however, is not similarly situated to Plaintiff because his salary was funded through a contract with Mercy Philadelphia and his continued academic appointment was necessitated by a contractual obligation between Defendants and Mercy Philadelphia. Plaintiff's employment, unlike that of Dr. Pasirstein, was not related to any contractual obligation between Defendants and a third-party. Finally, Dr. Corbin and Dr. Pasirstein's dual roles were funded differently than Plaintiff's. As such, Defendants contend, and this Court agrees, they were not similarly situated and, thus, are not appropriate comparators.

Because Plaintiff has not established a *prima facie* case of gender discrimination in relation to her termination, she has not provided sufficient evidence to support an inference of discrimination. As such, Defendants' motion for summary judgment as to Plaintiff's gender discrimination claim premised on her termination is granted.

### *Retaliatory Termination Claim*

Defendants also move for summary judgment on Plaintiff's claim of retaliatory discharge. Title VII, the PHRA, and the PFPO prohibit an employer from discharging an employee in retaliation for that employee's participation in a protected activity. *See* 42 U.S.C. § 2000e-3(a);

43 Pa. Const. Stat. § 955(d); Phila. Code § 9-1103(1)(g).[6]  Like Plaintiff's other discrimination claims, Plaintiff's retaliation claims are subject to the *McDonnell Douglas* burden-shifting analysis.  *See Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim); *Tomaszewski*, 460 F. Supp. 3d at 599 (concurrently analyzing a Title VII, PHRA, and PFPO retaliation claim under the same framework and requiring the same *prima facie* elements).  That is, Plaintiff must first establish a *prima facie* case of retaliation by showing that:  (1) she engaged in a protected activity; (2) Defendants took a materially adverse employment action against her after or contemporaneously with Plaintiff's protected activity; and (3) there is a causal connection between her participation in the protected activity and Defendants' adverse action.  *Wilkerson v. New Media Tech. Charter Sch., Inc*., 522 F.3d 315 320 (3d Cir. 2008).  A causal connection between the protected activity and adverse action may be inferred from: (1) an unusually suggestive temporal proximity between the two; (2) an intervening pattern of antagonism following the protected conduct; or (3) the proffered evidence examined as a whole.  *Kachmar v. SunGuard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).  If Plaintiff establishes a *prima facie* case, the burden shifts to Defendants to advance a legitimate,

---

[6]  Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e-3(a).  The PHRA similarly makes it unlawful for an employer to "discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act." 43 Pa. Cons. Stat. § 955(d).  The PFPO also makes it unlawful for an employer to "retaliate or discriminate in any manner against any person because [she] has . . . exercised [her] rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."  Phila. Code § 9-1103(1)(a).

non-retaliatory reason for their action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). If Defendants meet this burden, the burden shifts back to Plaintiff to show pretext. *Fuentes*, 32 F.3d at 764.

Here, Defendants do not dispute, at this stage of litigation, that Plaintiff engaged in a protected activity or that her termination constitutes an adverse employment action; they argue simply that Plaintiff has failed to present evidence sufficient to show the existence of a causal link between Plaintiff's protected activities and her termination. To support the causal connection, Plaintiff offers evidence of a number of actions undertaken by Defendants following Plaintiff's complaints of gender discrimination.

Included in those examples, Plaintiff argues that in September 2018, she raised concerns with HR of the inequitable treatment of men and women in the Department of Emergency Medicine. As a result, Dr. Hamilton, Plaintiff's supervisor, told Plaintiff to come to him about future conflicts she had with her colleagues and suggested she reach out to those she had complained of to resolve their issues. In July 2019, Plaintiff, along with hundreds of other employees, received a letter explaining that Hahnemann was closing and that, as a result, Plaintiff would lose her faculty position on January 14, 2020.[7] Following receipt of the letter, Plaintiff began talking with other faculty members about her path forward and potential appointments that would allow her to remain a DUCOM and Drexel faculty member and continue her position as Director of the MSMS program. Between September 25 and 30, 2019, Plaintiff made more complaints of gender discrimination to HR and the OED. On October 29, 2019, Plaintiff was placed on administrative leave while the Public Safety Department investigated an incident that

---

[7] Plaintiff concedes that the removal of her clinical duties as a result of the Hahnemann closure was not discriminatory in any way. (Pl.'s Br., ECF 29, at p. 10). Plaintiff, however, argues that the concurrent termination of her employment as the Director of the MSMS program was retaliatory.

10

occurred on October 25, 2019. HR instructed other Drexel and DUCOM faculty and staff to have no contact with Plaintiff until the conclusion of the investigation. As a result, Plaintiff was unable to line up another faculty position that would have allowed her to retain her position as Director of the MSMS program. On November 8, 2019, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission (the "PHRC"), alleging gender discrimination and retaliatory placement on administrative leave. Drexel's General Counsel Office subsequently told the leading detective of the Public Safety Department to "hold off the [public safety investigation] interview because a lawsuit was filed by [Plaintiff.]." (Lashley Dep., ECF 29-14, at 58:12-14). Plaintiff remained on administrative leave through the end of her employment, which ended on January 14, 2020. Plaintiff's public safety investigation was marked closed on January 24, 2020.

This Court finds that Plaintiff's proffered evidence, examined as a whole, is sufficient to meet Plaintiff's summary judgment burden on causation for her retaliation claims. In particular, construed in Plaintiff's favor, the evidence shows that she was placed on administrative leave a month after she made complaints to HR of gender discrimination, and that she was effectively precluded from securing another faculty position as result of HR's instruction to other faculty to not speak to Plaintiff and the Office of General Counsel's directions to the Public Safety Department to effectively put a hold on their investigation. This evidence is sufficient to meet Plaintiff's *prima facie* burden on retaliatory discharge. Accordingly, Defendants' motion for summary judgment as to Plaintiff's retaliatory termination claims is denied.

### *Hostile Work Environment Claim*

Defendants argue Plaintiff cannot have a hostile work environment claim based on her termination because her termination was not discriminatory. To assert a claim of hostile work environment under Title VII, a plaintiff must allege facts sufficient to plausibly show that: (1) the

11

employee suffered intentional discrimination; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).[8] Defendants argue that because Plaintiff's termination was not discriminatory, Plaintiff cannot meet element one of a hostile work environment claim if it is premised on her termination. Defendants' argument, however, is unpersuasive as to Plaintiff's termination as Director. Since Plaintiff's retaliation claim has survived, as discussed above, a jury could find that Plaintiff's termination as Director was discriminatory. Thus, a genuine issue of material fact exists regarding Plaintiff's claim of hostile work environment. Accordingly, Defendants' motion as to the hostile work environment claims is denied.[9]

**CONCLUSION**

For the reasons set forth, Defendants' motion for summary judgment with respect to Plaintiff's gender discrimination claim, premised on her termination, is granted. Defendants' motion for summary judgment as to Plaintiff's retaliatory discharge and hostile work environment claims is denied. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.

---

[8] Hostile work environment claims brought under the PHRA and the PFPO require proof of the same elements. *See Williams v. Aramark Campus LLC*, 2020 WL 1182564, at * 5 (E.D. Pa. Mar. 12, 2020) (requiring the same elements to establish plaintiff's hostile work environment claims asserted pursuant to Title VII, the PHRA, the PFPO, and the ADA); *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 432 (E.D. Pa. 2023) (analyzing plaintiff's PHRA hostile work environment claim concurrently with his Title VII claim).

[9] Defendants also move to exclude evidence of Plaintiff's termination for the purposes of her hostile work environment claim. A motion to exclude evidence is better reserved for a motion in *limine*.